NETCO, INC., Appellant,

v.

Diana MONTEMAYOR and Ludiviana
Flores, Appellees.

No. 01–09–00705–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

March 31, 2011.

Bradley W. Cole, for NETCO, Inc.

Debra Vera Jennings, for Diana Montemayor and Ludiviana Flores.

Panel consists of Chief Justice RADACK and Justices BLAND and MASSENGALE.

## OPINION

JANE BLAND, Justice.

In this escrow account dispute, NETCO Inc. (NETCO) appeals from a judgment against it and in favor of Diana Montemayor and Ludivina Flores. Montemayor and Flores sued NETCO for breach of fiduciary duty, arising from NETCO's failure to pay money it held in escrow to a valid lien holder upon NETCO's closing of a real estate transaction. NETCO asserted a limitations defense, which the trial court submitted to a jury. Following the jury's finding against the merit of that defense, the parties submitted the breach of fiduciary duty claim to the bench. The trial court found against NETCO and

awarded damages. On appeal, NETCO urges that it should have judgment notwithstanding the jury's verdict because the plaintiff's counsel lacked reasonable diligence in effecting service of process. In addition, it challenges the trial court's bench trial finding of liability and its award of mental anguish damages.

We hold that the evidence supports the jury's finding that the plaintiffs exercised reasonable diligence in obtaining service of process, and thus the trial court did not err in denying NETCO's request for a jnov on its limitations defense. We further hold that sufficient evidence supports the trial court's liability findings, but that the award of mental anguish damages is not supported as a matter of law, under the standard for mental anguish damages set forth in *Parkway v. Woodruff.*[1] We therefore reverse that award. We affirm the judgment in all other respects.

## BACKGROUND

In June 2002, Montemayor entered into a contract for deed with Matthew Logan for the purchase of real property located at 8712 Kimwood in Houston, Texas. After a year of making payments, she decided that she and her cousin, Flores, would purchase the property through a mortgage and deed of trust. Sterling Bank had a lien on the Kimwood property to secure a loan that it had made to Logan.

NETCO conducted the real estate closing for the transaction on December 10, 2003, acting as both title company and escrow agent for the transaction. As part of the closing, NETCO prepared a title commitment and a HUD–1 settlement statement. Montemayor and Flores purchased a title policy on behalf of their lender to insure that, upon closing, clear

1. 901 S.W.2d 434, 444 (Tex.1995).

title to the property would transfer. In the commitment, NETCO acknowledged the Sterling Bank lien. But in the settlement statement it did not list Sterling Bank as a lienholder entitled to funds at closing. The "Reduction in Amount Due to Seller—Payoff of first mortgage loan" line item, typically used to indicate a payoff to the seller's lender, was left blank. Thus, the proceeds that should have been directed to Sterling Bank, as a lien holder, were instead paid to Logan, the seller. Montemayor, Flores, and NETCO signed the HUD–1 settlement statement.

Montemayor and Flores also executed a document identified as NETCO's Escrow Trust Disbursement Instructions. This document stated that Montemayor and Flores authorized and directed NETCO to make disbursements for the purchase of the property.

NETCO's escrow agent issued a check for $88,703.35 to Logan. It did not pay Sterling Bank any funds to resolve the bank's existing lien, to which Logan's title was subordinated, nor did it secure a release of Sterling Bank's lien on the property. At closing, Montemayor and Flores paid NETCO $574 for title insurance services and $250 for escrow services.

In 2005, Montemayor and Flores attempted to sell the Kimwood property to Martha Morales. They testified that it was at that time that they discovered that Sterling Bank had a lien on the property. Montemayor and Flores thus lacked marketable title to the property, and could not complete the sale. Montemayor and Flores subsequently abandoned the property, and it was foreclosed. Montemayor and Flores purchased another home prior to the Kimwood foreclosure. At the time the Kimwood property was foreclosed upon, the Sterling Bank lien was still outstanding.

On April 18, 2007, Montemayor and Flores sued NETCO. They also asserted a claim against Logan, which he settled for $35,000. After the trial court denied NETCO's motion for summary judgment on limitations, it bifurcated the case, and tried the limitations defense to a jury. The jury returned findings that favored Montemayor and Flores. The trial court then held a bench trial on the remaining issues in the case. It awarded Montemayor and Flores $41,135.20 in economic damages and $50,000 for mental anguish. After applying an offset of $35,000 to credit the settlement from Logan, the trial court rendered judgment for $56,135.20.

## STATUTE OF LIMITATIONS

NETCO contends that the trial court erred in denying its motion for jnov after the jury found that Montemayor's and Flores's breach of fiduciary duty claims were not barred by the statute of limitations. Both parties agree that the applicable statute of limitation for a breach of fiduciary duty claim is four years. Tex. Civ. Prac. & Rem.Code Ann. § 16.004 (West 2002). The jury found that (1) Montemayor and Flores should have discovered that the proceeds of the closing were paid to Matt Logan, not Sterling Bank, by May 30, 2005; and (2) that Montemayor and Flores had exercised due diligence in serving NETCO with this lawsuit. The jury's second finding is necessary if we determine that the service date was outside the limitations period, and the jury's accrual date is incorrect as a matter of law.

Montemayor and Flores maintain that the jury's finding that the limitations period did not begin to run until they attempted to sell the property and "discovered" the Sterling Bank lien on May 30, 2005, is legally correct. NETCO responds that the discovery rule is not applicable here, and that the limitations period began to

run on December 10, 2003—the date of the real estate closing. NETCO further asserts that because it was not served with process within four years of that date, the breach of fiduciary duty claims against it are time barred as a matter of law. We agree with NETCO's legal contention about the accrual date, but we uphold the jury's second finding about diligence in service. We agree with the trial court that NETCO failed to establish its limitations defense as a matter of law because some evidence supports the jury's conclusion that the plaintiffs exercised reasonable diligence in securing service.

### A. Standard of Review

Rulings on motions for jnov are reviewed under the same legal-sufficiency test as are appellate no-evidence challenges if made on an evidentiary basis. *See Tanner v. Nationwide Mut. Fire Ins. Co.,* 289 S.W.3d 828, 830 (Tex.2009) (citing *City of Keller v. Wilson,* 168 S.W.3d 802, 823 (Tex.2005)). When such a ruling is based on a question of law, we review that aspect of the ruling de novo. *In re Humphreys,* 880 S.W.2d 402, 404 (Tex.1994) ("[Q]uestions of law are always subject to de novo review."); *John Masek Corp. v. Davis,* 848 S.W.2d 170, 173 (Tex.App.-Houston [1st Dist.] 1992, writ denied) (providing that jnov is proper when legal principle precludes recovery); *see also Morrell v. Finke, M.D.,* 184 S.W.3d 257, 290–91 (Tex.App.-Fort Worth 2005, pet. denied) (concluding that trial court erred by denying defendants' motion for jnov because plaintiff's claims against them were barred by statute of limitations). A jnov is proper when a directed verdict would have been proper. *See* Tex.R. Civ. P. 301; *Fort Bend Cnty. Drainage Dist. v. Sbrusch,* 818 S.W.2d 392, 394 (Tex.1991); *CDB Software, Inc. v. Kroll,* 992 S.W.2d 31, 35 (Tex.App.-Houston [1st Dist.] 1998, pet. denied). A motion for jnov should be granted when the evidence is conclusive and one party is entitled to recover as a matter of law or when a legal principle precludes recovery. *Phar–Mor, Inc. v. Chavira,* 853 S.W.2d 710, 713 (Tex.App.-Houston [1st Dist.] 1993, writ denied) (citing *Mancorp, Inc. v. Culpepper,* 802 S.W.2d 226, 227 (Tex.1990)).

### B. Accrual Date

The discovery rule defers the accrual of a cause of action until the plaintiff knows, or by exercising reasonable diligence, should know of the facts giving rise to the claim. *Barker v. Eckman,* 213 S.W.3d 306, 311–12 (Tex.2006). For the discovery rule to apply, the injury must be inherently undiscoverable and objectively verifiable. *Id.* at 312; *Via Net v. TIG Ins. Co.,* 211 S.W.3d 310, 313 (Tex.2006). When analyzing the applicability of the discovery rule in cases in which the alleged injuries arise from a breach of fiduciary duty, the claims are generally considered inherently undiscoverable. *S.V. v. R.V.,* 933 S.W.2d 1, 8 (Tex.1996); *Computer Assocs. Int'l, Inc. v. Altai, Inc.,* 918 S.W.2d 453, 456 (Tex.1996). Nonetheless, once the fiduciary's misconduct becomes apparent, the claimant cannot ignore it, regardless of the fiduciary nature of the relationship. *S.V.,* 933 S.W.2d at 8; *Computer Assocs.,* 918 S.W.2d at 456. In other words, such claims accrue when the claimant knows or in the exercise of ordinary diligence should know of the wrongful act and resulting injury. *Murphy v. Campbell,* 964 S.W.2d 265, 271 (Tex.1997). The date that a claimant knew or should have known of an injury is generally a fact question. *Childs v. Haussecker,* 974 S.W.2d 31, 44 (Tex. 1998). However, if reasonable minds could not differ about the conclusion to be drawn from the facts in the record, the start of the limitations period may be determined as a matter of law. *Id.*

■ Based on the evidence presented at the jury trial, NETCO established as a matter of law that Montemayor and Flores knew or should have known about their injury at the date of the closing—December 10, 2003. The closing documents showed the existence of the Sterling Bank lien on schedule C of the title commitment. The owner's affidavit that Montemayor and Flores executed contained this commitment. In contrast, the HUD–1 settlement statement authorized the disbursement of funds to Logan, the Harris County tax commissioner, and the local school system, but did not authorize a disbursement to Sterling Bank. The settlement statement contained a section entitled "Reduction in Amount Due to Seller." A line in that section, which indicates whether there has been a payoff of first mortgage loan, was left blank, thereby indicating that Sterling Bank had not been paid. Montemayor and Flores signed the settlement statement as well.

■ Thus, the record shows that at closing, Montemayor and Flores signed documents (1) indicating the existence of a lien by Sterling Bank, but (2) recognizing that NETCO proposed to disburse funds to parties that did not included Sterling Bank. They are presumed to know the content and effect of the documents they signed. *See First City Mortg. Co. v. Gillis,* 694 S.W.2d 144, 147 (Tex.App.-Houston [14th Dist.] 1985, writ ref'd n.r.e.) ("If no fraud is involved, one who signs an agreement without knowledge of its contents is presumed to have consented to its terms and is charged with knowledge of the agreement's legal effect."). In addition, a properly recorded lien provides notice to all persons of its existence. *HECI Exploration Co. v. Neel,* 982 S.W.2d 881, 887 (Tex.1998). The Sterling Bank lien was a properly recorded lien. Accordingly, we hold that the statute of limitations began to run on the closing date, December 10, 2003, as a matter of law.

### C. Diligence in Service

■ Montemayor and Flores sued NETCO on April 18, 2007, within the four-year limitations period that began to run on December 10, 2003. However, they did not achieve service on NETCO until April 15, 2008, four months after limitations had expired.

■ If a plaintiff files its petition within the limitations period, service outside the limitations period may still be valid if the plaintiff exercises diligence in procuring service on the defendant. *Ashley v. Hawkins,* 293 S.W.3d 175, 179 (Tex. 2009); *Gant v. DeLeon,* 786 S.W.2d 259, 260 (Tex.1990) (per curiam) (citing *Zale Corp. v. Rosenbaum,* 520 S.W.2d 889, 890 (Tex.1975) (per curiam)). Once a defendant has affirmatively pleaded the defense of limitations and shown that service was untimely, the burden shifts to the plaintiff to prove diligence in her efforts to effectuate service. *Ashley,* 293 S.W.3d at 179; *Proulx v. Wells,* 235 S.W.3d 213, 216 (Tex. 2007) (per curiam). Diligence is determined by asking "whether the plaintiff acted as an ordinarily prudent person would have acted under the same or similar circumstances and was diligent up until the time the defendant was served." *Ashley,* 293 S.W.3d at 179 (quoting *Proulx,* 235 S.W.3d at 216). Although ordinarily a fact question, a plaintiff's evidence may demonstrate a lack of diligence as a matter of law "when one or more lapses between service efforts are unexplained or patently unreasonable." *Id.* (quoting *Proulx,* 235 S.W.3d at 216). The plaintiff has the burden to explain every lapse in effort or period of delay. *Proulx,* 235 S.W.3d at 216 (citing *Gant,* 786 S.W.2d at 260).

Here, the jury found that Montemayor and Flores exercised diligence in serving

NETCO. The following timeline is relevant to their attempts to serve NETCO:

April 18, 2007 NETCO is sued. Plaintiffs request service through the secretary of state on NETCO's registered agent for service of process in Texas.

May 15, 2007 First attempt to serve NETCO at the address provided by the secretary of state as the address for NETCO's registered agent. The attempted service is by certified mail return receipt requested; it is returned for an insufficient address.

May 24, 2007 Second attempt to serve NETCO at the address on file with the secretary of state by certified mail return receipt requested. The letter is returned "undeliverable as addressed."

June 18, 2007 Third attempt to serve NETCO at the same address by certified mail return receipt requested. The letter is returned "undeliverable as addressed."

June 19, 2007 Fourth attempt to serve NETCO at the same address by certified mail return receipt requested. The letter is returned for an insufficient address.

December 3, 2007 Limitations expires.

January 2, 2008 In response to inquiries, the Texas Department of Insurance informs counsel that NETCO is not an insurance company and that if they desire for the department to effectuate service on NETCO, they must provide the authority for their request.

January 7, 2008 Plaintiffs request that the Texas Department of Insurance serve NETCO. The Department of Insurance notifies counsel that it does not require title insurance companies to register with the department.

February 13, 2008 NETCO files an amended statement of registered agent for service of process with the secretary of state, naming a different agent in Houston, Texas.

March 31, 2008 Plaintiffs' counsel hires a professional process server, who attempts to effectuate personal service on NETCO at the physical location of the registered agent in Carrolton, Texas. After physically viewing the premises, the process server informs plaintiff's counsel that NETCO's agent is no longer at the address that NETCO had on file with the secretary of state.

April 1, 2008 Plaintiffs' professional process server attempts personal service on NETCO's president in Buffalo Grove, Illinois. The attempted service is not successful.

April 15, 2008 Plaintiffs serve NETCO via substituted service on the secretary of state, which agreed to forward service to the president of the company after multiple attempts at service on the registered agent had failed.

NETCO argues that, as a matter of law, these service attempts show a lack of diligence. Like the trial judge and the jury in this case, we disagree. The plaintiffs filed suit against NETCO within the limitations period. They obtained service within four months of the expiration of limitations. Most relevant to the consideration of diligence here is NETCO's failure to maintain a correct address for its agent for service of process with the secretary of state, as required by law for companies that do business in Texas.

Service of process on corporations is governed by the Texas Business Organizations Code. The Code places a duty upon corporations to maintain a registered agent and office, and to notify the secretary of state of any change to either. *See*

TEX. BUS. ORGS.CODE ANN. §§ 5.201, 5.202 (West 2010). The Code provides that the secretary of state becomes the agent for service of process of a corporation whenever a corporation fails to maintain a registered agent in Texas, or whenever its registered agent cannot be found with reasonable diligence at the registered office. *See* TEX. BUS. ORGS.CODE ANN. § 5.251 (West 2010).

Here, the jury could reasonably have concluded that, although multiple attempts to serve process via NETCO's registered agent failed, the blame lay with NETCO, not plaintiffs' counsel. *See G.F.S. Ventures, Inc. v. Harris,* 934 S.W.2d 813, 818 (Tex.App.-Houston [1st Dist.] 1996, no writ) (upholding default judgment where record demonstrated service via the secretary of state on company's registered agent, and company failed to notify secretary of state of registered agent's change of address); *Ingram Indus. Inc. v. U.S. Bolt Mfg., Inc.,* 121 S.W.3d 31, 34 (Tex. App.-Houston [1st Dist.] 2003, no pet.) (holding that copy of original citation returned unexecuted with the notation "bad address" sufficient to show registered agent could not be found with reasonable diligence, and upholding default judgment against corporation). It is undisputed that plaintiffs' counsel served NETCO at the address it had provided for its registered agent on four occasions. Plaintiffs' counsel testified that the secretary of state's office requested a showing that multiple efforts at service on the registered agent had failed before it would agree to forward service of process on the president of the company. This testimony was not controverted.

■■■ NETCO points to a five and a half month period of inaction before the expiration of limitations, and urges that the jury could not find diligence in the face of this delay. When several service efforts at the address provided by the secretary of state failed, plaintiffs' counsel confirmed the address with the secretary of state's office. That office verified that the address that plaintiffs' counsel used was correct. Counsel attempted to locate NETCO's agent of service of process through the Department of Insurance, but was told that title insurance companies do not register agents through that agency. Counsel then attempted alternative means of service through NETCO's physical address and through NETCO's president. Counsel's private process server personally confirmed that NETCO had no registered agent at the physical address that it had provided to the secretary of state. Plaintiff sought substituted service in the trial court, and achieved service within four months of the expiration of limitations. Plaintiffs' counsel offered a sufficient explanation for the delay: NETCO's failure to update its registered agent for service of process hampered service. *Cf. Ashley,* 293 S.W.3d at 179 (noting that plaintiff made no explanation for lapse in service attempts). Her trial testimony regarding her efforts to achieve service supports the jury's verdict. *See Proulx,* 235 S.W.3d at 217 (noting that defendant's efforts to avoid service is circumstance to consider in determining plaintiff's diligence); *G.F.S. Ventures,* 934 S.W.2d at 816 (noting that, under Texas law, secretary of state becomes agent for service of process on corporation whenever corporation fails to maintain registered agent in Texas, or whenever its registered agent cannot be found with reasonable diligence at registered office.); *see also* TEX. BUS. ORGS.CODE ANN. § 5.251 (West 2010).

We hold that the evidence supports the jury's conclusion that the plaintiff exercised diligence, and thus the trial court did not err in submitting the issue to the jury or in denying NETCO's motion for jnov.

### D. Admission of Evidence

Lastly, NETCO contends that the jury's findings on diligence should be reversed because the trial court admitted a letter from Dan Kuhn, an employee in NETCO's legal department to the Texas Department of Insurance. In the letter, he states:

As I understand the complaint, [Montemayor and Flores] allege that NETCO incorrectly disbursed funds in their settlement and did not pay off the contract seller's lien.

I have reviewed the file and discussed with file with [other NETCO personnel] and the complaint appears accurate. . . . Inadvertently at the settlement of the transaction the funds necessary to satisfy the Sterling Bank lien were instead disbursed directly to Matt Logan and not to Sterling Bank.

When this error was discovered well after settlement, I immediately made contact with Matt Logan and was told by Mr. Logan that he would contact Sterling Bank and take care of procuring a release of lien.

Whether to include or exclude evidence is a matter committed to a trial court's discretion, requiring reversal only if any error probably caused it to render an improper judgment. *Nissan Motor Co. v. Armstrong*, 145 S.W.3d 131, 144 (Tex. 2004). NETCO contends that the trial court abused its discretion in admitting the letter because it came after the date by which all had learned that the Sterling Bank lien still existed. It further contends that a reference to NETCO's error had the potential of unfairly prejudicing the jury against its limitations defense. The letter, however, was responsive to the suggestion that NETCO had introduced through witnesses that it had not made any error during the closing because it had disbursed the settlement amounts in accord with the HUD–1 settlement statement, and Montemayor and Flores were fully informed that Sterling Bank would not be paid. Both parties introduced concepts of liability into evidence. We hold that the trial court acted within its discretion when it admitted the letter. The letter demonstrated that the Sterling Bank lien had not been released, and that NETCO itself did not discover the error until "well after settlement." Although we have held that the discovery rule does not apply to the accrual date in this case, the accrual date was an issue that the trial court asked the jury to decide, and thus the letter had some relevance. NETCO did not seek a limiting instruction, or ask that the letter be redacted, to ameliorate any concern that the jury would use the letter for an inadmissible purpose. *See* Tex.R. Evid. 105(a).

## BREACH OF FIDUCIARY DUTY

### A. Liability

Turning to the merits, NETCO complains that the trial court's finding that NETCO breached its fiduciary duty is legally insufficient because NETCO complied with its obligations as an escrow agent as a matter of law. NETCO contends that it disbursed the escrow funds "as instructed," and that "it cannot violate a fiduciary duty by doing exactly that which [Montemayor and Flores] instructed [it] to do." It further contends that Montemayor and Flores' proof of breach fails for lack of expert testimony to support it.

NETCO prepared the settlement statement and also prepared the title commitment. The latter reflected the lien held by Sterling Bank, but the former did not. NETCO was charged with the knowledge of the lien in the title commitment that it prepared. NETCO did not pay the lien

holder as listed in its title commitment, and it did not secure a release of the Sterling Bank lien. NETCO stipulated at trial that part of its obligation was to secure such a release:

> THE COURT: It is undisputed that when [Montemayor and Flores] refinanced with New Century that Sterling, which was Logan's mortgage company, the first lien that they have on the property did not get paid off?
>
> COUNSEL FOR NETCO: That is correct.
>
> THE COURT: NETCO admits they should have done it. It was a mistake. It didn't get paid.
>
> COUNSEL FOR NETCO: We admit we should have gotten a release from Sterling Bank.

Kuhn, a senior examiner for NETCO, also admitted that NETCO had erred. In addition, Logan testified at trial that he called NETCO shortly after receiving the closing proceeds and inquired whether NETCO had obtained a release from Sterling Bank. A NETCO representative responded that it must have been done since Logan had received the check.

 A title insurer who acts as an escrow agent has a duty to exercise a "high degree of care to conserve the money and pay it only to those persons entitled to receive it." *City of Fort Worth v. Pippen,* 439 S.W.2d 660, 665 (Tex.1969). In *Pippen,* the city sued Rattikin, its title insurer, after discovering that Rattikin's vice-president had paid a city land agent part of the funds that the city had escrowed to pay the seller. *Id.* at 662–63. Rattikin argued that it was not liable because it was the city's own agent who benefitted from the diversion of funds, and the city received title to the properties in question. *Id.* at 665. The Texas Supreme Court rejected this defense, and held that Rattikin was liable for breach of its duty

"regardless of the fact that the [c]ity received exactly what it intended to buy." *Id.* Similarly, NETCO argues that Montemayor and Flores signed the settlement statement that indicated that NETCO had not deducted the lien amount from the payment to Logan, and thus responsibility for the problem falls to them. But as the jury did in *Pippen,* the trial court in this case reasonably could have concluded that Montemayor and Flores's failure to catch NETCO's error on the settlement statement does not excuse NETCO from liability as title insurer and escrow agent—it prepared both the settlement statement and the title commitment and "was paid a fee for its services and for the careful handling of these funds." *See id.* NETCO did not secure the release of the Sterling Bank lien; its obligation to do so was among the purposes for which it was hired in the first place. Its failure to secure the release of lien is some evidence of a breach of its duties. *See Chilton v. Pioneer Nat'l Title Ins. Co.,* 554 S.W.2d 246, 248 (Tex. Civ.App.-Waco 1977, writ ref'd n.r.e.) (holding that title insurer's failure to cash two escrow checks and deposit them, as done in normal course, was some evidence of breach of fiduciary duty). NETCO does not otherwise challenge the breach, except to say that expert testimony was required. It cites no authority for this contention, but its own admission regarding its error precludes reversal on this basis. Kuhn agreed that the escrow fee paid to NETCO "obligated NETCO in the ordinary course of business to have paid off or gotten a release of the Sterling Bank lien." We hold that sufficient evidence supports the trial court's finding that NETCO breached its duties as title insurer and escrow agent.

**B. Mental Anguish Damages**

 In *Parkway Co. v. Woodruff,* 901 S.W.2d 434 (Tex.1995), the Texas Supreme Court set out the requirements for

proof of recovery for mental anguish damages. Mental anguish is the pain resulting from grief, severe disappointment, indignation, wounded pride, shame, despair or public humiliation. *See id.* at 444 (quoting *Trevino v. Sw. Bell Tel. Co.*, 582 S.W.2d 582, 584 (Tex.Civ.App.-Corpus Christi 1979, no writ)). A trial court cannot award mental anguish damages without either " 'direct evidence of the nature, duration, or severity of [plaintiffs'] anguish, thus establishing a substantial disruption in the plaintiffs daily routine', or other evidence of 'a high degree of mental pain and distress' that is 'more than mere worry, anxiety, vexation, embarrassment, or anger.' " *Saenz v. Fid. & Guar. Ins. Underwriters*, 925 S.W.2d 607, 614 (Tex.1996) (quoting *Parkway*, 901 S.W.2d at 444).

In this record, there is some evidence of damage to the plaintiffs' credit reputation, and expenses that the plaintiffs incurred to improve and maintain the house. These are economic losses, and were subsumed within the trial court's actual damages finding. The evidence to support an award of mental anguish is Montemayor's testimony. Flores did not testify. Montemayor testified that the NETCO's error made her feel: "basically pretty furious," "pretty devastated and furious to say the least," and "extremely furious." This is the complete record on the matter of mental anguish.

 But to recover damages for mental anguish in a case in which the loss is purely economic, one must prove severe and enduring grief. *See id.; see also Parkway*, 901 S.W.2d at 444. In *Parkway*, the Texas Supreme Court held that the worry and anger that the plaintiffs had

due to the flooding of their home did not entitle them to mental anguish damages. *See Parkway*, 901 S.W.2d at 444. Similarly, in *Saenz*, the plaintiffs' worry about losing their house due to a loss of income did not rise to a compensable level of mental anguish. *Saenz*, 925 S.W.2d at 614. We hold that the trial court erred in awarding mental anguish damages because the evidence in the record does not approach the "high degree of mental pain and distress," long in duration and severe, that is necessary to support such an award. *See id.; Parkway* 901 S.W.2d at 444. We therefore reverse the award of those damages.

## CONCLUSION

We hold that legally sufficient evidence supports the jury's finding that the plaintiffs exercised diligence in obtaining service of process and the trial court's finding that NETCO is liable for breach of fiduciary duty.[2] But the finding of mental anguish damages, sustained in connection with the economic loss, is not supported by legally sufficient evidence. We therefore reverse that award. We affirm the judgment in all other respects.

SHERRY RADACK, Chief Justice, dissenting.

Because I believe that, as a matter of law, Montemayor and Flores did not exercise due diligence in serving NETCO, I respectfully dissent.

Montemayor and Flores filed suit on April 18, 2007, which was within the four-year limitations period that began to run on December 10, 2003. However, NETCO was not served with the lawsuit until April

---

2. NETCO also challenges a breach of contract finding by the trial court as lacking sufficient pleadings to support it. But the trial court rendered judgment on the breach of fiduciary duty claim, and not on a contract claim. Be-

cause we uphold the breach of fiduciary duty claim and the trial court did not render a judgment on breach of contract, we need not address NETCO's request that we disregard the trial court's contract finding.

15, 2008, over four months after limitations had expired.

If a plaintiff files a petition within the limitations period, service outside the limitations period may still be valid if the plaintiff exercises diligence in procuring service on the defendant. *Ashley v. Hawkins*, 293 S.W.3d 175, 179 (Tex.2009); *Gant v. DeLeon*, 786 S.W.2d 259, 260 (Tex. 1990) (per curiam) (citing *Zale Corp. v. Rosenbaum*, 520 S.W.2d 889, 890 (Tex. 1975) (per curiam)). Once a defendant has affirmatively pleaded the defense of limitations and shown that service was untimely, the burden shifts to the plaintiff to prove diligence in her efforts to effectuate service. *Ashley*, 293 S.W.3d at 179; *Proulx v. Wells*, 235 S.W.3d 213, 216 (Tex.2007) (per curiam). Diligence is determined by asking "whether the plaintiff acted as an ordinarily prudent person would have acted under the same or similar circumstances and was diligent up until the time the defendant was served." *Ashley*, 293 S.W.3d at 179; *Proulx*, 235 S.W.3d at 216. The duty to use due diligence continues from the date the suit is filed until the date the defendant is actually served. *Taylor v. Thompson*, 4 S.W.3d 63, 65 (Tex.App.-Houston [1st Dist.] 1999, pet. denied). Although ordinarily a fact question, a plaintiff's evidence may demonstrate a lack of diligence as a matter of law "when one or more lapses between service efforts are unexplained or patently unreasonable." *Ashley*, 293 S.W.3d at 179; *Proulx*, 235 S.W.3d at 216. The plaintiff has the burden to "explain every lapse in effort or period of delay." *Proulx*, 235 S.W.3d at 216 (citing *Gant*, 786 S.W.2d at 260).

Here, the jury found that Montemayor and Flores exercised due diligence in serving NETCO. NETCO argues that, because it proved a lack of diligence as a matter of law, the trial court erred in overruling its motion for JNOV. I agree.

One month after the suit was filed, Montemayor and Flores made four successive attempts to serve NETCO at the same address. All four attempts were returned for an insufficient or undeliverable address. Then, for almost six months, Montemayor and Flores made no attempts at all to serve NETCO. Their attorney, Debra Jennings, admitted that after the previous failed attempts at service, "[n]othing prevented me from [attempting service through the Secretary of State]. It's a choice. The cheaper, less costly way is to serve them by certified mail, which will cost you about five bucks."

Limitations ran on December 3, 2007. In early January 2008, after almost six months of unexplained inaction, Jennings made two attempts to have the Texas Department of Insurance serve NETCO, despite having been told by the Department that NETCO was not an insurance company. Finally, on March 31, 2008—almost one year after suit was filed and almost 3 months after her last contact with the Department of Insurance—Jennings hired a private process server to attempt service, the first of which was made at the same address as the four previous, unsuccessful attempts. When the private process server was twice unsuccessful, service was finally accomplished via substituted service on the Secretary of State on April 15, 2008—almost one year after suit was filed.

Courts have routinely held claims to be time-barred as a matter of law for similar lapses in diligence. *See, e.g., Webster v. Thomas*, 5 S.W.3d 287, 289–90 (Tex.App.-Houston [14th Dist.] 1999, no pet.) (holding no due diligence as matter of law when evidence showed plaintiff's actions over four months were not designed to procure issuance and service of citation); *Butler v. Ross*, 836 S.W.2d 833, 836 (Tex.App.-Houston [1st Dist.] 1992, no writ) (holding five-and-one-half months of inactivity and no

service efforts between failed attempts at incorrect address and proper service at the correct address constituted a lack of due diligence); *Hansler v. Mainka,* 807 S.W.2d 3, 5 (Tex.App.-Corpus Christi 1991, no writ) (stating that request for service five months after suit was filed affirmatively demonstrated lack of due diligence); *see also Gant,* 786 S.W.2d at 260 (holding that plaintiff failed to exercise due diligence as matter of law because he provided no explanation for delays in service for three periods totaling thirty-eight months).

In *Taylor v. Thompson,* the plaintiff filed her lawsuit almost five months before limitations expired, but made no service attempts until two days before limitations ran, and finally accomplished service almost one month after limitations expired. 4 S.W.3d at 65. This Court—noting that the duty to exercise due diligence continues from the time suit is filed until service is accomplished—held that because the plaintiff did not offer any explanation for her failure to attempt service in the four months after her suit was filed until two days before limitations ran, she did not show due diligence as a matter of law. *Id.* at 65-66.

Because there is no evidence in the record explaining Montemayor's and Flores's lapses in service attempts from June 20, 2007 to January 7, 2008 and again from January 8, 2008 to March 31, 2008, I would hold that as a matter of law, NETCO has established that Montemayor and Flores did not exercise due diligence in their attempts to serve NETCO. Accordingly, I would hold that the trial court erred in not granting NETCO's motion for JNOV and not setting aside the jury's finding that the Montemayor and Flores exercised due diligence in serving NETCO.