In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-17-00447-CV
_____

EDNA ADAMS DUNCAN, Appellant

V.

HAROLD LEE BROWN, Appellee

On Appeal from the 284th District Court
Montgomery County, Texas
Trial Cause No. 15-10-11457-CV

MEMORANDUM OPINION

Defendant Edna Adams Duncan appeals the trial court's denial of her motion for judgment notwithstanding the verdict after a jury awarded damages to Plaintiff Harold Lee Brown in this personal injury suit resulting from an automobile/pedestrian accident. The primary issue on appeal is whether Brown exercised due diligence in serving Duncan with the petition. The evidence presented to the jury established that the accident occurred on October 30, 2013. Duncan

1

testified at trial that she was not served with this suit until June 2016. Duncan filed an answer on July 11, 2016. Approximately four months later, Duncan filed an amended answer and asserted a limitations defense arguing the claims were barred.

The jury found Duncan eighty percent liable for the accident and for Brown's injuries and awarded damages for past medical expenses and loss of earning capacity sustained in the past. After the jury's verdict was announced, Duncan made an oral motion for judgment notwithstanding the verdict (JNOV) and informed the court that she would be filing a written motion for JNOV. The trial court denied the oral motion, later signed a final judgment in accordance with the jury verdict, and never signed the proposed JNOV filed by Duncan. Duncan moved for a new trial, and the motion was overruled by operation of law. *See* Tex. R. Civ. P. 329b(c). Duncan appealed.

In one appellate issue, Duncan argues the trial court erred in denying her motion for JNOV because Brown failed to exercise due diligence in serving the petition on the defendant. Duncan contends that "the evidence conclusively demonstrated that Brown did not serve Duncan until over seven months after the limitations period expired and after a five-month gap of inactivity[.]"

2

## Standard of Review

A trial court may disregard a jury finding and enter a judgment notwithstanding the verdict if the finding is immaterial or if there is no evidence to support the finding. *Tiller v. McLure*, 121 S.W.3d 709, 713 (Tex. 2003); *Spencer v. Eagle Star Ins. Co. of Am.*, 876 S.W.2d 154, 157 (Tex. 1994). We review rulings on motions for a JNOV under the same legal-sufficiency test that we review no-evidence summary judgments and directed verdicts. *See Tanner v. Nationwide Mut. Fire Ins. Co.*, 289 S.W.3d 828, 830 (Tex. 2009) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005)). Applying that standard, a no-evidence point will be sustained when (1) there is a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or rules of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a scintilla, or (4) the evidence conclusively establishes the opposite of a vital fact. *City of Keller*, 168 S.W.3d at 810 (citing *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003), and other cases). We view the evidence and inferences in the light most favorable to the jury's finding. *Id.* at 807. The test for legal sufficiency is "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *Id.* at 827. In making this determination, we credit favorable evidence if a reasonable factfinder could, and

3

disregard contrary evidence unless a reasonable factfinder could not. *Id.* So long as the evidence falls within the zone of reasonable disagreement, we may not substitute our judgment for that of the factfinder. *Id*. at 822. The trier of fact is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Id.* at 819.

Statute of Limitations and Due Diligence in Perfecting Service

If a plaintiff files his petition within the limitations period, service outside the limitations period may still be valid if the plaintiff exercises due diligence in procuring service on the defendant. *Ashley v. Hawkins*, 293 S.W.3d 175, 179 (Tex. 2009); *Gant v. DeLeon*, 786 S.W.2d 259, 260 (Tex. 1990) (per curiam) (citing *Zale Corp. v. Rosenbaum*, 520 S.W.2d 889, 890 (Tex. 1975) (per curiam)). Once a defendant has affirmatively pleaded the defense of limitations and shown that service was untimely, the burden shifts to the plaintiff to prove diligence in his efforts to effectuate service. *Ashley*, 293 S.W.3d at 179; *Proulx v. Wells*, 235 S.W.3d 213, 216 (Tex. 2007) (per curiam). "Diligence is determined by asking 'whether the plaintiff acted as an ordinarily prudent person would have acted under the same or similar circumstances and was diligent up until the time the defendant was served.'" *Ashley*, 293 S.W.3d at 179 (quoting *Proulx*, 235 S.W.3d at 216). Although ordinarily a fact question, a plaintiff's evidence may demonstrate a lack of diligence as a matter

4

of law "'"when one or more lapses between service efforts are unexplained or patently unreasonable."'" *Id.* (quoting *Proulx*, 235 S.W.3d at 216). The plaintiff has the burden to explain every lapse in effort or period of delay. *Id.*

### Hearing on Motion to Dismiss for Lack of Jurisdiction

On the morning of trial, before the parties began jury selection, Duncan's attorney e-filed a Motion to Dismiss for Lack of Jurisdiction arguing that the case was barred by the statute of limitations and that Brown failed to exercise due diligence in perfecting service of process. The trial court denied the motion on the record, noting that the trial court had jurisdiction and the cases do not support a dismissal based on a lack of jurisdiction.

### Evidence Presented to the Jury

In Brown's case in chief, Brown presented evidence about the accident, his work history, his injuries, and medical care.[1] After the plaintiff initially rested, the defense attorney made a motion for directed verdict arguing the plaintiff failed to put on any evidence as to service or to establish due diligence. The trial court allowed Brown's counsel to reopen the evidence to put on evidence about the exercise of due diligence and his attempts to serve Duncan.

---

[1] For purposes of this appeal, we need not discuss this evidence as we limit our discussion to the evidence related to the issue of due diligence.

With respect to the issue of due diligence, the jury heard testimony from Brown's counsel and it received exhibits. At trial, Brown's counsel testified that in an earlier suit he filed on March 24, 2014, Duncan was served September 2, 2014, and Duncan provided her deposition in that proceeding. Brown's attorney explained to the jury that Brown non-suited the first suit because Brown was unable to be present for trial as he was out of state seeking employment, and the trial court refused to grant a continuance. Brown's attorney testified that Brown filed suit again against Duncan in the 284th District Court of Montgomery County on October 28, 2015, two days before limitations expired.

Brown's counsel explained to the jury that he exercised due diligence in serving Duncan, stating

> . . . [W]e filed [the request for issuance of citation to Duncan] with the Court, and we paid the Court for the sheriff to serve her.
>
> At some point, there were issues regarding serving her, because the sheriff, once they get that kind of citation, they have the authority to do it by mailing. And then they did that . . . and that is the . . . [tracking documentation] that the Court printed for us - -
>
> - - which showed that the sheriff - - the sheriff officers mailed - - mailed it to her house. You're going to see it as you . . . go to make your decision, it went to her house by certified mail, they left notice there, and then it was unclaimed. She didn't pick it up. Then it went back to her house and came back to the court.
>
> When that happened, we did not have notice of that, that process was delayed, because no matter if you have the sheriff's service, you have the opportunity that at least you have somebody impartial and neutral who will get the service done. And then we were waiting.

When we did not hear anything, that's when we received the notice from the court that she has not been served, and then we filed a motion for substitute of process, which was filed March 10, 2016. . . .

. . .

So after that motion for substituted service was filed so we could serve Ms. Duncan, you can do it by publication, although that brings in more embarrassment than anything else. That's why you have to try other processes, private service, the court, the sheriff and all of that.

To fast forward, Ms. Duncan filed an answer in the case.

. . .

So the issue of due diligence . . . we believe that we did everything that we have to do.

In some cases, you have individuals going at the other people's jugular, but you do process service by private. That's [what] we did in 2014. She was served. The sheriffs attempted to serve her. They were unable to do that. We could have gone on publication, but - - on this side. We do not think that you need to bring anything up that embarrasses the other side regardless of what the case is all about.

And we have tried all of that until - - until this point. It would have been addressed if it was raised before the Court earlier. Here, we believe that we did everything that we have to do on our side. The whole instance of being served is for you to know that something is going on. There is no way the other side will say that they did not know what was going on when the petition was filed five months after - - after two years that we have.

The second one, after it was nonsuited, was filed within that two years. And everything that we have to do on our side, private process service, the Court process service, we did.

On cross-examination, Brown's attorney testified that he requested a citation from the clerk of court in the second case the "moment it was filed." According to the testimony from Brown's attorney, "[w]e requested service originally when we filed the case." Duncan's attorney continued his cross-examination of Brown's

7

attorney and referred to a docket sheet (that was not marked or admitted as an exhibit) and the following exchange occurred:

Q. Sir, once again, do you know when you requested a citation in the second case, in this 2015 case?

A. We requested citation the moment it was filed.

Q. When was it filed?

A. It was filed October 28, 2015, I believe. I'm not sure. I do not have the specific date. The one that I have with me here is the original one of –

. . .

Q. I'm going to show you a civil process request that's signed by you. That's signed by you, correct?

A. Yes, that's correct.

Q. And what is the date at the top of it? There's a file stamp date of when you filed that request.

A. This was December 15, 2015.

Q. That's when you requested citation in this matter, correct?

A. No, let me -- let me explain to you. We requested service originally when we filed the case.

Q. Do you have any evidence of that?

A. As I mentioned to you, this is something that you are just raising now. I do not have the file. I'm -- presented to the Court. If we have to brief the Court, I have more than enough material on the law and the fact to brief the Court. This is just a last-minute thing that you are doing.

. . .

Q. I'm going to show you a court docket we looked at off the record a little bit earlier. You see the third entry there is titled Request For Service. Isn't it true that you didn't request service in this case until December 15th, 2015?

A. We requested service when we filed our petition. Remember, we filed the original petition within five months of the case. We filed the second one within two years. We requested citation, as we always do.

Q. In the 2015 case, the first time you requested citation was December 15, 2015, correct?

A. This is the document that you are just showing to me. I mean, normally something of this nature will be tried, parties would exchange information on every issue that you're going to ask questions about. That is why we served discovery to you.

If I knew you were going to raise all these issues, I would have asked you to give me all the document that you want to refer to. I could look into it. If I have anything I will give it to you, and not something that you're just bringing in in the last minute.

So this is your document. I don't know how authentic it is and stuff like that. This is just a last-minute --

[Defense Attorney]: Your Honor, can the Court take judicial notice that the citation was first issued on December 15th, 2015?

THE COURT: Granted. The Court will take judicial notice that's a fact.

Plaintiff's Exhibit 4 is a document entitled "USPS Tracking Results" that Brown's attorney testified reflected that the clerk of court sent service by certified mail to Duncan, but it was returned undelivered. Plaintiff's Exhibit 4 was admitted into evidence, and it indicates "Notice Left (No Authorized Recipient Available)"

9

on December 21, 2015. The document also indicates "Unclaimed/Being Returned to Sender" on December 26, 2015. Brown's counsel testified that the USPS document shows that the citation "went to her home [and] [s]he didn't pick it up." The document indicates that the citation arrived back at the USPS unit in Conroe on December 30, 2015. The trial court took judicial notice of part of the clerk's file that contained the December 15, 2015 citation and tracking information as follows

> The Court will take judicial notice that the clerk's file reflects that citation was mailed certified, and I believe the date is December -- correct me if I'm wrong -- December 15, 2015. And the follow-up was just obtained -- the Court took judicial notice -- which is going to be now marked as plaintiff's new Exhibit No. 4. Instead of Court Exhibit 1, it will be Plaintiff Exhibit 4 reflecting the tracking on that. And those have been received -- accepted by the Court as -- and judicially noticed as facts and as documents that are true.

Brown's attorney told the jury that after receiving notice from the clerk of court that Duncan had not been served, he filed a motion for substitute service of process stating that "Plaintiff attempted to serve Defendant on several occasions by personal delivery through the Montgomery County Sheriff's Office but has not been successful despite due diligence on the part of the Plaintiff and efforts of Montgomery County Sheriff's Office." A copy of Plaintiff's Motion for Substituted Service was marked and admitted into evidence as Plaintiff's Exhibit 5. Brown's attorney further testified that he filed another motion for substituted service and that the trial court signed an order approving it.

Brown's original motion for substituted service of process was dated March 10, 2016, and it indicates that Brown asked the trial court to authorize him to serve Duncan by leaving a copy of the petition and order authorizing substituted service attached with anyone at Duncan's address over sixteen years of age, by firmly affixing a true copy of the citation with a copy of the petition and the order authorizing substituted service attached and leaving the copy at Duncan's address, or by publication. According to the testimony from Brown's attorney, it was to be placed on submission, and then he also filed a second motion that was then signed by the trial court. Brown's attorney also explained that Duncan filed an answer, on July 11, 2016.[2] Brown's attorney explained

> A. So Ms. Duncan filed an answer on this case. After filing an answer, we did what they called discovery. Discovery is where you serve the other people paper, tell us about yourself. The other side serves you paper. And that has continued on. And that's when the Court fixed the trial for today.
> All along from the time that she was served and we did discovery and she did deposition and everything, there was no issue raised about an answer until today.
>
> [Defense Attorney]: Objection, Your Honor. We had an amended answer on file.
> THE COURT: Sustained. The defendant has pled that timely.

[2] Plaintiff's Exhibit 6 was also admitted into evidence. Exhibit 6 is an Officer's Return and an affidavit from a private process server in 2014 and it indicates when and where Duncan was served with the earlier suit, and the address where Duncan was served by personal service in 2014 is the same address where Brown attempted service in the second suit.

After Brown's attorney finished his testimony, the plaintiff rested again, and the defendant renewed his motion for directed verdict. The trial court then denied the motion for directed verdict.

The defense called Duncan to testify.[3] Duncan testified that in June 2016 a lady with a "badge like a sheriff's[]" came to her door and served her papers in this case. Duncan testified that before being served she had not heard anything about the case since it had been dismissed in the fall of 2015, but she acknowledged "our mail service out there is not the best[]" and that "[w]e have days that we don't get mail." Duncan subsequently filed an answer, and on October 21, 2016, Duncan filed her amended answer asserting the defense of limitations and lack of due diligence.

After the parties rested and the evidence was closed, the defendant then again moved for a directed verdict on limitations, arguing the burden shifted to the plaintiff to explain the delay and establish due diligence. Again, the trial court denied the motion. An issue about due diligence was submitted to the jury in question one[4] and the jury answered "Yes" finding that Brown exercised due diligence.

---

[3] The defendant also called another witness, the State Trooper who responded to the accident. For purposes of this appeal, we need not discuss the detail of the officer's testimony because it does not relate to the issue on appeal.

[4] Neither party made any objections to the charge. The first question submitted to the jury was

12

Analysis

The jury heard testimony from Brown's attorney that Duncan had been served previously in the earlier suit that was non-suited. The attorney also testified that he non-suited the earlier case because Brown was unable to attend trial, and that Duncan knew about the possibility of a new suit being filed within the limitations period because it had been discussed between the parties' attorneys. Brown's attorney told the jury that he requested service when he first filed the second suit on October 28, 2015. Brown's attorney explained that the clerk issued a citation and attempted service by certified mail in December 2015, but as indicated on the tracking documentation for the citation sent by certified mail it was returned as "unclaimed." The citation was delivered back to the clerk on December 30, 2015, according to

QUESTION 1
    Did Harold Lee Brown, or someone acting on his behalf, exercise diligence to have Edna Adams Duncan served?

    The standard of diligence required is that diligence to procure service which an ordinarily prudent person would have used under the same or similar circumstances. The duty to use diligence continues from the time suit was filed against Edna Adams Duncan on October 28, 2015 until Edna Adams Duncan filed an answer on July 11, 2016.

    Answer "Yes" or "No."

Answer: YES

Plaintiff's Exhibit 4. The jury also heard testimony from Duncan that sometimes her mail service was not that reliable. The jury could have concluded that Brown made an initial request for service when he filed the second suit, and further that the unsuccessful attempts to serve the defendant by certified mail in December 2015 were because of mail delivery problems or avoidance of service, and circumstances beyond the control of Brown.

The jury also heard Brown's attorney testify that when he learned about the unsuccessful service he filed a request for substituted service on March 10, 2016, as indicated in Plaintiff's Exhibit 5. And, the jury heard Brown's attorney explain his first motion for substituted service was to be by "submission," that he then filed a second motion for substituted service, and that the defendant was served and then filed an answer. Duncan testified she was served in June 2016.

Based on the record before us, the jury could have reasonably concluded that Brown explained his efforts to obtain service after learning of the failed attempted service in December 2015, because the attorney testified that he made further attempts to obtain service by filing two motions for substituted service and then he obtained successful service of process in June 2016. Brown's attorney also testified that he also tried service by a private process server. The jury could have believed

the testimony of Brown's attorney that he "did everything that we have to do on our side, private process service, the court process service, we did."

Deferring to the jury's evaluation of the credibility and weight of the evidence and viewing the evidence in the light most favorable to the jury's finding as we must, we conclude that a reasonable jury could have found that Brown exercised due diligence in effectuating service on Duncan. *See Ashley*, 293 S.W.3d at 179 (quoting *Proulx*, 235 S.W.3d at 216). The jury could have reasonably inferred from the testimony and exhibits that Brown's attorney made continuous reasonable efforts between October 28, 2015 through the date she was served to effectuate service and that he explained any gaps. *See City of Keller*, 168 S.W.3d at 807, 827; *see also NETCO, Inc. v. Montemayor*, 352 S.W.3d 733, 739-41 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (evidence supported jury's finding of due diligence when plaintiff obtained service within four months of expiration because the jury could have reasonably concluded due diligence in service where defendant-company failed to maintain a correct address for its agent for service of process with the secretary of state, plaintiff's counsel explained the delay, and plaintiff sought substituted service); *Lawrence v. Geico Gen. Ins. Co.*, No. 01-07-00873-CV, 2009 Tex. App. LEXIS 5082, at **7-11 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (evidence supported jury's finding of due diligence when plaintiff served defendant by

15

publication eight months after filing suit, plaintiff had to serve by publication again because of typographical error in the first citation, plaintiff did not seek substituted service but finally served defendant personally seven months after service by publication, and plaintiff worked on the case every month until actual personal service was accomplished). We cannot say the jury's finding is outside the zone of reasonable disagreement. *See City of Keller*, 168 S.W.3d at 822. Accordingly, we overrule Duncan's sole appellate issue. We affirm the trial court's judgment.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on January 24, 2019
Opinion Delivered July 25, 2019

Before Kreger, Horton, and Johnson, JJ.