**Opinion issued April 7, 2016**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-14-00650-CV

————————————

## OSCAR TAYLOR AND DENISE TAYLOR, Appellants

## V.

## ADRIENNE A. HENNY AND DAMON K. HENNY, Appellees

On Appeal from the 152nd District Court
Harris County, Texas
Trial Court Case No. 2008-40075

## MEMORANDUM OPINION

This appeal arises from a business dispute among former restaurant partners. Adrienne Henny sued former business partners Denise and Oscar Taylor for breach of a separation agreement, tortious interference with a sales contract, fraud, and

negligent misrepresentation. Damon Henny was later joined as an involuntary plaintiff. After the close of evidence, the Hennys nonsuited their fraud claim against the Taylors to avoid a take-nothing directed verdict. After a jury found in favor of the Hennys, the trial court partially granted the Taylors' motion for judgment notwithstanding the verdict and awarded Adrienne Henny breach-of-contract damages, pre- and post-judgment interest, and contingent appellate attorney's fees. The court later granted the Taylors' motion to modify the judgment, eliminating lost-profit breach-of-contract damages and reducing the award to $160,000 plus interest and fees. Both the Taylors and the Hennys appealed.

The Taylors bring five issues on appeal. In three rendition issues, they contend that (1) the breach-of-contract claim must fail because the separation agreement did not require them to do what Adrienne alleged they failed to do, (2) Adrienne did not establish causation because other circumstances would have caused her damages even in the absence of their alleged contractual breach, and (3) the evidence was legally insufficient to prove the amount of damages found by the jury. In the alternative, the Taylors argue that a new trial is warranted because the breach-of-contract jury question improperly combined valid and invalid theories of liability and because the evidence is factually insufficient to support the jury's verdict as to breach of contract, causation, and damages.

The Hennys raise three issues on appeal. First, they contend that the court erred by granting JNOV as to their tortious interference claim, which they assert is supported by legally sufficient evidence. Second, they argue that the court erred by dismissing Damon's claims as barred by the statute of limitations. They contend that the Taylors have waived this defense by joining Damon as an involuntary plaintiff in this case. Third, they contend that the trial court erred by reducing the lost-profit damages found by the jury, which they argue are supported by legally sufficient evidence.

We reverse the trial court's judgment awarding contract damages, render a take-nothing judgment on that cause of action in favor of the Taylors, and otherwise affirm the judgment of the trial court.

**Background**

Damon and Adrienne Henny and Oscar and Denise Taylor jointly owned Cayenne's Corporation, through which they operated three Cajun hot wings restaurants called "Cayenne's Restaurant." The restaurants were located in Houston on Woodforest Boulevard, Kirby Drive, and FM 1960, and they were operated in leased premises. The Kirby and FM 1960 restaurant premises were both leased from Weingarten Realty.[1] The Kirby lease was executed on November

---

[1]     Weingarten Realty is the general partner of Main/O.S.T., Ltd, which was the landlord for the Kirby lease. Weingarten Realty Investors was listed as the

3

10, 2003 for a term of five years. The FM 1960 lease was executed on March 31, 2005 for a term of ten years. Both leases were signed on behalf of Cayenne's by both Denise (as President) and Adrienne (as Secretary).

Both Denise and Adrienne were listed as guarantors on the leases, and each signed a personal guaranty as to each lease. The guarantees included identical provisions that they would remain in effect in the event of an extension or assignment by the tenant, without regard to whether the guarantor had consented to the changes.[2]

In December 2005, the two couples decided to divide the business. To that end, they entered into a separation agreement, which provided that thereafter the Taylors would "operate, manage, and own" the restaurant located on Woodforest Boulevard and the Hennys would "operate, manage, and own" the restaurants located on Kirby and FM 1960. They agreed to divide the corporate debt, establish new corporate identities, and cease using the name and identity of "Cayenne's" in

---

landlord on the FM 1960 lease. For convenience, we refer to the landlord on both leases as "Weingarten Realty."

[2] The guarantees state:

> Guarantor further covenants and agrees that this Guaranty and the full liability of Guarantor hereunder shall remain and continue in full force and effect notwithstanding the occurrence of any one or more of the following types of transactions (whether or not Guarantor shall have received any notice of or consented to any such transaction); (i) any renewal, extension, modification or amendment of said Lease Contract; . . . (iii) any assignment or transfer or subletting by Tenant . . . .

any form by a date identified in the agreement. Specifically, the agreement provided:

> **The terms of the following agreement shall provide for the operation of said restaurants as expressly indicated. Further, the following agreement contains the entire agreement of the parties and there are no other promises or conditions in any other agreement whether oral or written.**
>
> . . . .
>
> It is agreed Oscar and Denise Taylor will operate, manage and own Cayenne's Restaurant located on Woodforest Boulevard without interference from any other party. Damon and Adrienne Henny will operate, manage and own Cayenne's Restaurant located on Kirby and the Cayenne's Restaurant located on FM 1960 without interference from any party.
>
> It is agreed all administrative changes, including but not limited to contacting vendors, employees and/or any necessary third parties, will be completed by February 1, 2006.
>
> . . . .
>
> It is further agreed all parties will establish new company identities by March 31, 2006 to properly dissolve the existing corporation. After March 31, 2006 no party will use the Cayenne's Restaurant name, identity or logo in any form.

Two years later, in 2008, the Hennys decided to sell their restaurants, which by that time were operated under the name Coozan's Hot Wings and Bayou Café LLC ("Bayou Café"). They entered into a purchase agreement with Coozan's Inc., a corporation owned and created by Bruce and Martha Pollock for the purpose of purchasing the Hennys' business. Bruce had worked as a stockbroker for 25 years, and he planned to "take [the business] public" and sell franchises. The agreement

5

provided for the sale of all of the associated business assets in exchange for a total purchase price of $547,730, to be paid as $34,160 in cash, assumption of outstanding debt, and 600 shares of Coozan's, Inc. This agreement required Bayou Café to assign the leases.

The purchase agreement between Bayou Café and Coozan's, Inc. was effective February 5, 2008, and the five-year lease on the Kirby location was set to expire January 31, 2009. After signing the purchase agreement but without obtaining assignment of the lease, Bruce and his business partners and employees took over business operations and ran the restaurants for approximately eight months. During this time he attempted to negotiate with Weingarten Realty regarding the lease on the Kirby location. Bruce testified that Weingarten Realty assured him that if he were "put on the lease," the lease would be renewed. However, he also testified that Weingarten Realty's "real problem" at that time was that it "objected to [them] being there without being on the lease itself."

On April 14, 2008, Weingarten Realty sent Adrienne two letters regarding the proposed assignment of the Kirby and FM 1960 leases. The stated purpose of the letters was to transmit lease assignment and assumption documents showing the assignments from Cayenne's Corporation to Bayou Café and from Bayou Café to Coozan's, Inc. Both letters requested "execution by all of the pertinent parties"

and stated that the executed documents "must be received . . . on or before May 5, 2008." Both letters stated:

> Time is of the essence, and if all of the foregoing items have not been received by the requested date, Landlord may treat any attempt thereafter by Tenant to assign the Lease or sublease the Premises (whether to Assignee or any other party) as an Event of Default under the terms of the Lease.

Each of the four proposed assignments included a paragraph called "Consent of Guarantors" beneath the signature lines. A blank space was provided for Adrienne's and Denise's signatures. These provisions stated that the guarantors consented to the foregoing lease assignment and assumption and continued:

> Guarantors are granting their consent for the sole purpose of providing comfort to Landlord and such consent shall not be construed to create, or deemed to create, any right of consent not expressly granted or required in the Guaranty. The terms and provisions of said Guaranty shall remain in full force and effect and shall apply to the Lease, as such Lease has been amended herein.

Bruce testified that during the time he was attempting to negotiate a sublease, he had called Denise and later met with Oscar at his office. Bruce wanted them to consent to granting a sublease by signing the documents as requested and prepared by Weingarten Realty. He said Oscar was friendly, but "he refused to allow any changes made to the lease." Bruce could not recall any other details of the conversation.

On May 28, 2008, the Hennys' attorney sent a letter to the Taylors transmitting the April 14 letter from Weingarten Realty along with the lease

7

assignment and assumption documents. The letter stated that these documents "require[d] the signature of Oscar Taylor, Denise Taylor and Cayenne's Corporation." The documents that were transmitted to the Taylors for signature had five signature lines: one for a representative of Weingarten Realty, one for Adrienne as President of Bayou Café, one each for Adrienne and Denise, individually, as guarantors, and one for Cayenne's Restaurant, Inc. The transmittal letter to the Taylors also stated:

> Pursuant to your agreement of December 2005, you are obligated to execute these documents. Your failure to do so interferes with the ownership, management and operation of the Henny's [sic] restaurants.
> If we do not receive the executed Lease Assignment and Assumption Agreements by 5:00 pm on Monday, June 9, 2008, we will move forward with the filing of the enclosed petition.

Denise did not sign the documents, and according to Bruce and the Hennys, without her signature, Weingarten Realty would not consent to an assignment or sublease. Bayou Café never assigned the lease or subleased the premises to Bruce or Coozan's, Inc. When the Kirby lease expired, Weingarten Realty informed Bruce that it had leased the premises to another party. Bruce and his company withdrew from the agreement to purchase the restaurants from Bayou Café. The Hennys then sued the Taylors.

At trial, Bruce, Damon, and Adrienne testified that Denise's refusal to sign the lease assignments caused the Pollocks to back out of the purchase agreement.

8

Denise testified that Bruce, Adrienne, and Weingarten Realty told her she was being asked to cosign a lease. She refused because she did not know the Pollocks. Both Denise and Oscar testified that they made numerous attempts to have Weingarten Realty release her from the leases and her guarantees, but it refused. They also both testified that they never received the May 28 letter or the lease assignment documents.

Both Bruce and Oscar testified that they had a cordial meeting in which Bruce asked Oscar to convince his wife to sign the paperwork. Oscar testified that Bruce told him they would all "be tied at the hip going forward," "[e]ven though you, Mr. Taylor, and Mrs. Taylor, would not receive any profits or anything from you signing to stay on the lease."

The jury found in favor of the Hennys on breach of contract and tortious interference with a contract, specifically the purchase agreement between Bayou Café and Coozan's, Inc. The Taylors filed a motion for judgment notwithstanding the verdict challenging the sufficiency of the evidence and raising other legal arguments about the verdict and the Hennys' causes of action. The trial court granted the motion for JNOV in part and later granted a motion to modify, finding that no evidence supported the jury's award of lost-profit damages. The final judgment awarded breach-of-contract damages to Adrienne in an amount of

$160,000, plus interest and contingent appellate attorney's fees. Both sides appealed.

## Analysis

The Taylors contest the judgment as lacking legal foundation and evidentiary support on the elements of causation and damages. The Hennys contest the court's actions in disregarding some aspects of the jury's verdict. They contend that there was adequate evidentiary support for their tortious-interference claim and for the jury's determination of lost-profit damages. They also contend that the trial court erred by concluding that Damon's claims were barred by limitations, arguing that because the Taylors joined him as an involuntary plaintiff they should not be permitted to raise this affirmative defense. Because the contract claim was the only cause of action on which the court rendered judgment in favor of the Hennys, we begin our analysis there.

## I. Contract claim

In their first issue, the Taylors contend that the contract claim is unsupportable as a matter of law because the separation agreement did not create the obligation that Adrienne alleged was breached. The essential elements of a claim for breach of contract are (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained as a result of the breach. *E.g.*, *N. & W.*

*Ins. Co. v. Sentinel Inv. Grp.*, *LLC*, 419 S.W.3d 534, 539 (Tex. App.—Houston [1st Dist.] 2013, no pet.). Neither party contests the validity of the separation agreement. Although both argue that the separation agreement is unambiguous, they advance different interpretations of the clause requiring that administrative changes be made by February 1, 2006 and the provision requiring that they manage and operate their own restaurants "without interference."

In considering this issue we are mindful that, as to the contract claim, the trial court rendered judgment on the jury's verdict after a four-day trial on the merits. We review the judgment in light of the contractual language and the arguments advanced by the Taylors in their motion for directed verdict, motion for JNOV, and in their appellate briefs. The trial court's interpretation of a contract is a question of law, which we review de novo. *See Tawes v. Barnes*, 340 S.W.3d 419, 425 (Tex. 2011); *In re Dillard Dep't. Stores, Inc.*, 186 S.W.3d 514, 515 (Tex. 2006).

"'A contract is ambiguous when its meaning is uncertain and doubtful or is reasonably susceptible to more than one interpretation.'" *Dynegy Midstream Servs., Ltd. P'ship v. Apache Corp.*, 294 S.W.3d 164, 168 (Tex. 2009) (quoting *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996)); *accord In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 781 (Tex. 2006); *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). A simple lack of clarity or disagreement between

11

parties does not necessarily render a term ambiguous. *See DeWitt Cnty. Elec. Coop., Inc. v. Parks*, 1 S.W.3d 96, 100 (Tex. 1999). If, however, a contract is susceptible to two or more reasonable interpretations, it creates a fact issue for the trier of fact. *See Ashford Partners, Ltd. v. ECO Res., Inc.*, 401 S.W.3d 35, 38–39 (Tex. 2012).

"When construing a contract, the court's primary concern is to give effect to the written expression of the parties' intent." *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex. 1994). To determine the intent of the parties, we examine the entire writing and strive to harmonize and give effect to all provisions in the contract, so that no provision is rendered meaningless. *In re Serv. Corp. Int'l*, 355 S.W.3d 655, 661 (Tex. 2011). In doing so, we give contract terms "'their plain and ordinary meaning, unless the instrument indicates that the parties intended a different meaning.'" *Reeder v. Wood Cnty. Energy, LLC*, 395 S.W.3d 789, 794–95 (Tex. 2012) (quoting *Dynegy Midstream Servs.*, 294 S.W.3d at 168). "No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument." *Coker*, 650 S.W.2d at 393. We must enforce the contract as written: we may not rewrite or enlarge a party's obligations as stated in the contract. *See Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 162 (Tex. 2003); *Royal Indem. Co. v. Marshall*, 388 S.W.2d 176, 181 (Tex. 1965). "[C]ourts will not so construe plain language as to

make a contract embrace that which it was intended not to include." *British Am. Assurance Co. v. Miller*, 91 Tex. 414, 420, 44 S.W. 60, 62 (1898); *see Royal Indem.*, 388 S.W.2d at 181; *see also Fortis Benefits v. Cantu*, 234 S.W.3d 642, 649 (Tex. 2007) (in insurance subrogation case, Supreme Court was "loathe to judicially rewrite the parties' contract by engrafting extra-contractual standards" not required by law).

The Hennys alleged that the Taylors breached the parties' contract "regarding the division of Cayenne's Restaurant, Inc.," and that they "interfered with the Coozan's business to [their] detriment." The jury charge asked if the Taylors failed to comply with the separation agreement.

The record reflects some confusion as to the precise nature of the Hennys' complaint. In their response brief, they argue that the Taylors breached the separation agreement by failing to remove themselves from the lease agreements. They also argue on appeal that the Taylors refused to assign the lease from Cayenne's to Bayou Café. Throughout trial, their argument appeared to be that the Taylors breached the terms of the separation agreement by failing to sign the lease assignment and assumption documents when requested.

It is axiomatic that a breach-of-contract claim must involve an obligation that was allegedly breached. Because the arguments center on the Taylors' refusal to sign the lease assignment and assumption documents, we focus our analysis on

whether the separation agreement imposed such a duty on them in any capacity. As suggested by the trial and briefing in this case, potential ways in which they could have been required to sign the documents included: (1) as tenants to assign the lease, (2) on behalf of Cayenne's, or (3) as guarantors consenting to the assignment of the lease.

## A.    The Taylors were not required to sign as tenants

The original lease for the Kirby location listed only Cayenne's Restaurant as a tenant. Neither Oscar nor Denise was named as a tenant on either lease. The lease provided that the tenant could assign the lease or sublease the premises with "prior written permission" from the landlord, which would not be unreasonably withheld. The leases do not permit anyone other than a tenant to assign the lease. Therefore, because neither Oscar nor Denise was named as a tenant, they were neither authorized nor required to sign an assignment of the lease in their individual capacities.

To the extent the Hennys also argue that the separation agreement required the Taylors to take affirmative acts to "remove themselves from the Hennys' future business" by "seeking to remove themselves from the applicable leases with third-parties or at least cooperating to accomplish the same," this contention is based on the same misunderstanding. The Taylors were not parties to the lease and as such could not "remove" themselves from it. To the extent Denise personally was

obligated as guarantor, she had no power to obstruct any assignment of the lease the Hennys may have wished to transact, and thus "removing" her involvement as a guarantor (for the benefit of the landlord) was not required as an "administrative change" under the separation agreement.

**B.**  **The Taylors were not required to sign on behalf of Cayenne's**

The separation agreement did not expressly require the Taylors to act on behalf of Cayenne's for the Hennys' benefit. The separation agreement included a merger clause, which stated that it provided "for the operation of said restaurants as expressly indicated." It expressly indicated that the Taylors would "operate, manage and own" the restaurant on Woodforest Boulevard "without interference from any other party." It also expressly indicated that the Hennys would "operate, manage and own" the restaurants on Kirby and FM 1960 "without interference from any party." Thus, it expressly provided that the Taylors and the Hennys each independently were responsible for the operation, management, and ownership of their own restaurants. These reciprocal non-interference provisions did not affirmatively impose on either couple an obligation to assist the other couple with the operation, management, or ownership of their restaurant. *See Am. Mfrs. Mut. Ins.*, 124 S.W.3d at 162 (courts must enforce contract as written). Nor did the separation agreement require Denise or Oscar to take any affirmative action to help the Hennys sell the Bayou Café to Coozan's, Inc.

Finally, we consider that all four individuals were co-owners of the Cayenne's business. Both Damon and Oscar served as directors, and Adrienne and Denise were the corporate officers. Denise served as the President and Treasurer; Adrienne served as the Vice-President and Secretary. In light of this and the language in the separation agreement establishing that they would independently own, manage, and operate their respective restaurants, we find no support in the agreement for the existence of an obligation for Denise to act on behalf of Cayenne's as opposed to Adrienne acting on behalf of Cayenne's in her capacity as Vice-President and Treasurer. *See* TEX. BUS. ORGS. CODE §§ 3.101–.103 (business entity acts through its officers).

## C. The Taylors were not required to sign as guarantors

Denise was listed on the leases as an individual guarantor, but Oscar was not personally listed on the leases at all because he did not guarantee the leases. The documents that were transmitted to the Taylors had a signature line for Denise under a paragraph entitled "Consent of Guarantors." As such, this reflected that Denise was asked to consent as guarantor. But the original lease guaranty she signed did not require her consent and did not confer any right to consent, object, or even receive notice of an amendment to or modification of the lease. That is, so long as the tenant, Cayenne's, followed the provisions set forth in the lease for assignment or subleasing, the guaranty would continue in effect and the transaction

could proceed as provided by the lease without any action from the guarantor. In addition, the leases themselves provided that if a tenant believed that the landlord had unreasonably refused to consent to an assignment, the tenant's exclusive recourse was a declaratory judgment action.[3] Thus, neither the guaranty itself nor the lease required Denise to sign the new lease assignment and assumption documents as a guarantor, but they did provide a remedy to the Hennys if the landlord unreasonably withheld consent to a lease assignment due to insistence upon a legally meaningless "consent" by a guarantor whose obligation continued regardless of its consent.

The separation agreement's merger clause provided "for the operation of said restaurants as expressly indicated." Nothing in the separation agreement expressly created—as among the parties—a right or obligation to consent to transactions involving the other parties' leases. To do so would enable the parties to interfere with each other's business, which the parties expressly prohibited in their separation agreement.

In light of our foregoing analysis, we hold that the separation agreement did not obligate the Taylors to sign the lease assignment and assumption documents.

---

[3]     The Hennys argue that the Taylors' refusal to assign the lease "put them in direct violation of the 'without interference' provision of the Separation Agreement." But Denise's continuing guaranty of the Kirby and FM 1960 leases could not have interfered with Bayou Café's operation or management of its restaurants because she had no individual authority with regard to the leases—she only had responsibility to pay the rent (and other amounts due) when not paid by the tenant.

Because there was no contractual obligation for Denise or Oscar to sign the documents as requested by the Hennys, the breach-of-contract claim must fail as a matter of law. We sustain the Taylors' first issue, and we reverse and render a take-nothing judgment in favor of the Taylors on the breach-of-contract claim. In light of the disposition of this issue, we do not reach the Taylors' other issues or the Hennys' third cross-issue, which deals with breach-of-contract damages.

## II.     Tortious interference with a contract

In their cross-appeal, the Hennys argue that the trial court erred by granting the Taylors' motion for judgment notwithstanding the verdict and dismissing their cause of action for tortious interference with a contract. When reviewing a trial court's ruling on a JNOV based on the party's contention that it is entitled to judgment as a matter of law, we review the court's action de novo. *See In re Humphreys*, 880 S.W.2d 402, 404 (Tex. 1994); *NETCO, Inc. v. Montemayor*, 352 S.W.3d 733, 738 (Tex. App.—Houston [1st Dist.] 2011, no pet.). We review legal sufficiency challenges in accordance with the *City of Keller* standard, determining whether the evidence "would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005).

In their motion for JNOV, the Taylors challenged the tortious-interference claim on several grounds. First, they argued that the Hennys, individually, lacked

standing to recover for tortious interference with the contract between Bayou Café and Coozan's, Inc. Second, they argued that the economic-loss rule bars the tortious-interference claim. Third, they argued that there is no evidence they were aware of the conditions or requirements of the purchase agreement between Bayou Café and Coozan's, Inc., or that they had any intent to interfere. Fourth, they argued that they were justified in declining to sign the documents as requested by the Hennys under the doctrine of freedom of contract and article I, section 16 of the Texas Constitution. Accordingly, they argued that their decision was not actionable as tortious interference.

In granting JNOV, the trial court found that there was no evidence that Oscar or Denise intentionally interfered with Damon and Adrienne's contract with the Pollocks or, alternatively, the evidence conclusively showed that they did not interfere with that contract.

On appeal, the Hennys argue only that there was legally sufficient evidence to support the jury's verdict on their tortious interference claim. "A party to a contract has a cause of action for tortious interference against any third person who wrongly induces another contracting party to breach the contract." *Swank v. Sverdlin*, 121 S.W.3d 785, 800 (Tex. App.—Houston [1st Dist.] 2003, pet. denied); *see Holloway v. Skinner*, 898 S.W.2d 793, 794–95 (Tex. 1995). To establish a cause of action for tortious interference with contract, a plaintiff must prove that

19

(1) a contract subject to interference exists, (2) the defendant committed a willful and intentional act of interference with the contract (3) the act proximately caused injury, and (4) the plaintiff sustained actual damages or loss. *ACS Investors, Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex. 1997); *Better Bus. Bureau of Metro. Houston, Inc. v. John Moore Servs., Inc.*, 441 S.W.3d 345, 361 (Tex. App.—Houston [1st Dist.] 2013, pet. denied).

"Interference with contract is tortious only if it is intentional." *Sw. Bell Tel. Co. v. John Carlo Tex., Inc.*, 843 S.W.2d 470, 472 (Tex. 1992); *accord Wise v. Conklin*, No. 01-13-00840-CV, 2015 WL 1778612, at \*6 (Tex. App.—Houston [1st Dist.] Apr. 16, 2015, no pet.) (mem. op.). To prevail, the plaintiff must prove that the defendant intended to interfere with the contract at issue; it is not sufficient to prove merely the intent to do the particular act that was done. *See Sw. Bell Tel. Co.*, 843 S.W.2d at 472; *Wise*, 2015 WL 1778612, at \*6. That is, the "defendant's intent must be to effect a breach of contract, i.e., it must knowingly induce one of the contracting parties to breach its obligations." *Fitness Evolution, L.P. v. Headhunter Fitness, L.L.C.*, No. 05-13-00506-CV, 2015 WL 6750047, at \*23 (Tex. App.—Dallas Nov. 4, 2015, no pet.); *accord John Paul Mitchell Sys. v. Randalls Food Markets, Inc.*, 17 S.W.3d 721, 730 (Tex. App.—Austin 2000, pet. denied). A plaintiff must show that the defendant actively participated in

persuading a party to breach a contract. *Davis v. HydPro, Inc.*, 839 S.W.2d 137, 139 (Tex. App.—Eastland 1992, writ denied).

The Hennys argue that they produced more than a scintilla of evidence that the Taylors intended to interfere with the contract to sell the Bayou Café to Coozan's, Inc. They rely on the testimony from Oscar and Bruce regarding the one meeting they had. The Hennys argue that the purchase agreement was discussed at the meeting and therefore the Taylors had a reason to believe that there existed a contract in which the Hennys had an interest. They further argue that the Taylors' actions made it more difficult, burdensome, and expensive for them to perform their part of the purchase agreement with Coozan's, Inc. by refusing to sign the documents as requested.

Bruce testified that he met with Oscar at his office. As to the nature of their conversation, he testified that Oscar "refused to allow any changes made to the lease." When asked if they discussed anything else, he testified that he did not remember the conversation, adding, "That was six years ago." When Oscar was asked what he discussed with Bruce, he testified that Bruce said:

> I would like for you to talk to your wife who is not at this meeting to sign the assignment of the lease and that we will be taking over the restaurants. All of us would be tied at the hip going forward. Even though you, Mr. Taylor, and Mrs. Taylor, would not receive any profits or anything from you signing to stay on the lease.

21

> That's what we discussed besides—besides football, Super Bowl rings, LSU and Louisiana, which was 90 percent of the conversation.

No other evidence shows what matters were discussed at the meeting between the men.

The Hennys based their tortious interference claim on Denise's refusal to sign the lease-assignment documents. At trial, Bruce, Damon, and Adrienne testified that Denise's refusal to sign the lease assignments caused the Pollocks to back out of the purchase agreement. As we have already explained that the Taylors had no duty to sign those documents, it was not enough for the Hennys to show only that Denise refused to sign the lease-assignment documents. *See Sw. Bell Tel. Co.*, 843 S.W.2d at 472; *Wise*, 2015 WL 1778612, at *6. Rather, to prevail on their claim, the Hennys had to show that the Taylors knowingly induced or persuaded the Pollocks to breach their obligations to the Hennys. *See Fitness Evolution*, 2015 WL 6750047, at *23; *Davis*, 839 S.W.2d at 139. No evidence shows that Oscar knew any details of the agreement to sell the Bayou Café to Coozan's, Inc., that he intended to interfere with that contract, that he in any way induced or persuaded Bruce to breach the contract to purchase the Bayou Café. Therefore, there was no evidence to show that the Taylors had the requisite intent necessary to support a cause of action for intentional or tortious interference with a contract. *See Sw. Bell Tel. Co.*, 843 S.W.2d at 472; *Wise*, 2015 WL 1778612, at *6. We hold that the trial

court properly granted the Taylors' motion for JNOV as to the tortious-interference-with-a-contract claim. We overrule this cross-issue.

Having held that that the breach-of-contract and tortious interference claims fail as a matter of law, we do not reach the Hennys' second issue, which challenges the trial court's ruling that Damon's claims are barred by the statute of limitations.

## Conclusion

We reverse the judgment of the trial court and render a take-nothing judgment in favor of the Taylors on Adrienne Henny's breach-of-contract claims. We affirm the remainder of the judgment.


Michael Massengale
Justice

Panel consists of Chief Justice Radack and Justices Higley and Massengale.