**Opinion issued August 3, 2021**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-19-00814-CV

————————————

**TEXAS UNDERGROUND UTILITIES, INC., Appellant**

**V.**

**SOUTHWESTERN BELL TELEPHONE COMPANY, Appellee**

---

**On Appeal from the County Civil Court at Law No. 3**
**Harris County, Texas**
**Trial Court Case No. 1129099**

---

## MEMORANDUM OPINION

Appellant, Texas Underground Utilities, Inc. ("Texas Underground"), challenges the trial court's no-answer default judgment in favor of appellee, Southwestern Bell Telephone Company ("Southwestern Bell"), in Southwestern Bell's suit against Texas Underground for negligence and strict liability. In five

issues, Texas Underground contends that the trial court erred in denying its motion for new trial, the manner in which service was effected violated its due process rights and public policy, the pleadings were insufficient to support the trial court's default judgment, and the evidence is legally insufficient to support the trial court's damages award.

We affirm.

## Background

In its original petition, Southwestern Bell alleged that it is a "telephone corporation and a public utility" under Texas law. In keeping with its corporate mission, Southwestern Bell "had three copper communications cables"—components of its telecommunications system—"buried below the surface of the right-of-way of Dairy View Lane approximately 92 feet north of Bissonnet Street in Houston, Harris County, Texas." In September 2017, Texas Underground "bored or excavated" at that location, "and when it did, it struck and damaged [Southwestern Bell's] cables."

Southwestern Bell asserted that Texas Underground violated the Underground Facility Damage Prevention and Safety Act[1] which requires "a person who intends to excavate" to "notify a notification center not earlier than the 14th day before the

---

[1]     *See* TEX. UTIL. CODE ANN. §§ 251.001–.203.

date the excavation is to begin or later than the 48th hour before the time the excavation is to begin, excluding Saturdays, Sundays, and legal holidays."[2] It explained that the "purpose of the notice is to allow [an] underground utility operator an opportunity to mark the approximate location of its underground facilities in advance of the excavation."[3]

According to Southwestern Bell, Texas Underground failed to provide the statutorily required notice and, as a result, was liable for the damages it caused during its excavation. Southwestern Bell brought claims against Texas Underground for negligence and strict liability. And it asserted that it "suffered actual, incidental[,] and consequential damages[,] including the costs to replace, repair and/or restore th[e] portion of its telecommunications system that was damaged," which amounted to "at least $20,486.11" but no more than "the jurisdictional limits of the [trial] [c]ourt." With the petition, Southwestern Bell propounded interrogatories, requests for admission, requests for production, and requests for disclosure.

---

[2]    *See id.* § 251.151(a); *see also id.* § 251.101(a) (notification center receives notification of intent to excavate and disseminates that information to "operators [of underground facilities] that may be affected by the excavation").

[3]    *See id.* § 251.002(11), (13) (defining "[o]perator" and "[u]nderground facility" (internal quotations omitted)).

In its petition, Southwestern Bell identified Texas Underground as a Texas corporation that could "be served by serving its registered agent, Elizabeth Lugo, at its registered office at 5712 Val Verde, Suite 250, Houston, Texas 77057" (the "Val Verde address"). On March 6, 2019, the county clerk for Harris County issued a citation of service for Texas Underground through Lugo at the Val Verde address. A Harris County deputy constable attempted to serve the citation at that address on March 29, 2019. But the officer's return of citation filed April 15, 2019 with the clerk of the court, contains handwritten notes indicating that the Val Verde address was a "bad" address and explaining that there was "no such name or suite [number] on [the] door" and that the post office box showed that the address belonged to "ACTA/Pannell."

The deputy constable contacted Southwestern Bell's counsel and was instructed to "transfer" the citation to Texas Underground's business address, 8515 Cambridge Street, Houston, Texas 77054 (the "Cambridge Street address"). The deputy constable attempted to serve Texas Underground through Lugo at the Cambridge Street address during regular business hours on April 3, 2019, April 4, 2019, April 5, 2019, April 8, 2019, and April 10, 2019, leaving a card each time. None of these attempts was successful. In an affidavit, the deputy constable stated that "[i]t [wa]s impractical to procure service of [c]itation on [Texas Underground] . . . because he, she, they absent[ed] or secret[ed] himself, herself, or

4

otherwise evade[d] such service each time [the deputy constable] . . . attempted to effect such service on him, or her, in th[e] cause." And the deputy constable added that "Lugo d[id] work at th[e] [Cambridge Street address] but was not stated [sic] by the receptionist."

On April 16, 2019, Southwestern Bell amended its petition[4] and sought to serve citation on the Secretary of State.[5] The return of citation executed by a deputy constable in the Travis County Constable's Office, Precinct Five, and filed with the clerk of the court, states that on May 8, 2019, the deputy constable delivered "duplicate true copies of the citation together with accompanying duplicate true copies" of Southwestern Bell's first amended petition and discovery requests to the Secretary of State's designated agent for service. The Secretary of State issued a Certificate of Fact certifying that Texas Underground is an existing, for-profit domestic entity and that the Secretary of State's records show Lugo as the entity's designated agent for service and the Val Verde address as the entity's designated address for service. And in a written certification, Deputy Secretary of State Jose Esparza certified that on May 10, 2019 "a copy of the Citation and Plaintiff's First Amended Petition and Request for Disclosures was forwarded" to Lugo at the Val

---

[4]    Southwestern Bell's amended petition contained the same factual allegations and claims as its original petition.

[5]    *See* TEX. BUS. ORGS. CODE ANN. § 5.251(1)(B).

5

Verde address by certified mail, return receipt requested, and was returned to the Secretary of State's office on June 3, 2019 "[b]earing the notation Return to Sender, Unclaimed, Unable to Forward."

After Texas Underground did not answer Southwestern Bell's suit by June 3, 2019, or otherwise appear, Southwestern Bell moved for a default judgment. Southwestern Bell attached to its motion the affidavit of Paul Hartwell, a Senior Risk Specialist for Southwestern Bell. Hartwell attested to Southwestern Bell's business records documenting "the labor and materials used and the expenses incurred to repair the telecommunications cables that were damaged in the right-of-way of Dairy View Lane north of Bissonnet Street on or about September 7, 2017." Those business records accompanied Hartwell's affidavit. Hartwell also stated in his affidavit that "as part of [his] job, [he] ha[d] learned in general what [wa]s involved in the repair of telecommunications cables and related facilities" and he had "become familiar with the costs and expense of the labor and material necessary to repair communications facilities." And he averred that "[t]he claim against [Texas Underground] for repair costs in the amount of $20,486.11 [was] just, reasonable and was incurred by [Southwestern Bell]." After Southwestern Bell supplemented its motion with a copy of the return from the Secretary of State, the trial court rendered a default judgment in favor of Southwestern Bell, awarding it $20,486.11 in damages, plus pre-judgment interest and costs.

Texas Underground first appeared in the case and moved for new trial on September 5, 2019. In its motion, Texas Underground asserted that Southwestern Bell had failed to provide it with proper notice of suit because Southwestern Bell "knew or should have known" that the registered agent's address on file with the Secretary of State "was not the correct address on which to serve [Texas Underground]" and was not the address of Texas Underground's "home office." According to Texas Underground, Southwestern Bell "knew that the Val Verde address was no good," and the Deputy Secretary of State's certification showed that the citation, first amended petition, and discovery requests were sent to that address even though Southwestern Bell knew the correct address. Thus, Texas Underground asserted that it did not receive notice of Southwestern Bell's suit. Texas Underground also summarily asserted that the "*Craddock*[6] [f]actors [were] satisfied."

In its response to the motion for new trial, Southwestern Bell asserted that the record showed it exercised reasonable diligence in attempting to serve Texas Underground and because Texas Underground's registered agent could not be found at its registered office, Southwestern Bell properly served Texas Underground through the Secretary of State.[7] The Secretary of State's Certificate of Fact filed

---

[6]     *See Craddock v. Sunshine Bus Lines Inc.*, 133 S.W.2d 124, 126 (Tex. 1939).

[7]     *See* TEX. BUS. ORGS. CODE ANN. § 5.251(1)(B).

7

with the clerk of the court on June 18, 2019 showed that Texas Underground's registered agent was Lugo and that the address of Texas Underground's registered office was the Val Verde address. Thus, Southwestern Bell asserted that Texas Underground's failure to receive notice of the suit was due solely to its failure to comply with its duty to provide the Secretary of State with current and accurate information on the whereabouts of its registered office and the identity of its registered agent.[8] Because Texas Underground had not established that "it was never served or that service was improper," Southwestern Bell also argued that Texas Underground was required to satisfy the requirements of *Craddock v. Sunshine Bus Lines Inc.*, 133 S.W.2d 124 (Tex. 1939), which it had failed to do.

After a hearing,[9] the trial court denied Texas Underground's motion for new trial.

## Motion for New Trial

In its first issue, Texas Underground argues that the trial court erred in denying its motion for new trial because it "satisfied the requirements of" *Craddock* and the trial court should have vacated the default judgment against it.

---

[8]   *See id.* §§ 5.201, 5.202.

[9]   No evidence was admitted at the hearing on Texas Underground's motion for new trial.

8

We review the trial court's denial of a motion for new trial for an abuse of discretion. *See Dolgencorp of Tex., Inc. v. Lerma*, 288 S.W.3d 922, 926 (Tex. 2009). In other words, the court's ruling on the motion for new trial will not be disturbed on appeal absent a showing of an abuse of discretion. *Strackbein v. Prewitt*, 671 S.W.2d 37, 38 (Tex. 1984). A trial court abuses its discretion if its decision is arbitrary, unreasonable, and without reference to guiding rules and principles. *See Goode v. Shoukfeh*, 943 S.W.2d 441, 446 (Tex. 1997); *Imkie v. Methodist Hosp.*, 326 S.W.3d 339, 344 (Tex. App.—Houston [1st Dist.] 2010, no pet.). When as here, no findings of fact and conclusions of law are filed, the denial of a motion for new trial must be upheld on any legal theory supported by the evidence. *See Strackbein*, 671 S.W.2d at 38.

In *Craddock*, the Texas Supreme Court set forth three requirements that a defaulting party must satisfy to set aside a default judgment and obtain a new trial: (1) the defaulting party's failure to file an answer before judgment was not intentional or the result of conscious indifference but was a mistake or accident; (2) the defaulting party has a meritorious defense; and (3) a new trial will not result in delay or prejudice to the non-defaulting party. 133 S.W.2d at 126. To successfully challenge a default judgment, the defaulting party must allege the three *Craddock* requirements and support them with sworn proof. *Ivy v. Carrell*, 407 S.W.2d 212, 214 (Tex. 1966) (noting party challenging dismissal bears burden of

9

establishing entitlement to relief); *Polignone v. Bulldog Chems., LLC*, No. 01-16-00633-CV, 2018 WL 4128002, at *4 (Tex. App.—Houston [1st Dist.] Aug. 30, 2018, no pet.) (mem. op.). The defaulting party must either (1) allege facts and attach affidavits to a verified motion to set aside the default judgment or motion for new trial that meet the three *Craddock* requirements or (2) present evidence at the hearing on its motion that meets those requirements. *Polignone*, 2018 WL 4128002, at *4. A trial court abuses its discretion in denying a new trial when the *Craddock* requirements are satisfied. *Dolgencorp*, 288 S.W.3d at 926; *Bank One, Tex., N.A. v. Moody*, 830 S.W.2d 81, 85 (Tex. 1992); *Polignone*, 2018 WL 4128002, at *4.

To determine whether the trial court erred in not setting aside the default judgment against a defaulting party, we first consider whether its failure to answer was not intentional or the result of conscious indifference, but due to a mistake or an accident. *See Polignone*, 2018 WL 4128002, at *4. "Conscious indifference" means more than mere negligence. *Smith v. Babcock & Wilcox Constr. Co.*, 913 S.W.2d 467, 468 (Tex. 1995). "A failure to appear is not intentional or due to conscious indifference within the meaning of the rule merely because it is deliberate; it must also be without adequate justification." *Id.*; *see Mahand v. Delaney*, 60 S.W.3d 371, 374 (Tex. App.—Houston [1st Dist.] 2001, no pet.); *Sharpe v. Kilcoyne*, 962 S.W.2d 697, 701 (Tex. App.—Fort Worth 1998, no pet.); *see also Milestone Operating, Inc. v. ExxonMobil Corp.*, 388 S.W.3d 307, 310 (Tex. 2012) ("Consciously indifferent

10

conduct occurs when the defendant knew it was sued but did not care." (internal quotations omitted)). The defaulting party must offer some excuse for its failure to answer, which need not necessarily be a good excuse. *See Sutherland v. Spencer*, 376 S.W.3d 752, 755 (Tex. 2012); *Mahand*, 60 S.W.3d at 374 ("Even a slight excuse may justify a new trial."); *State v. Sledge*, 982 S.W.2d 911, 914 (Tex. App.—Houston [14th Dist.] 1998, no pet.).

In its motion for new trial, Texas Underground failed to articulate any excuse for failing to timely inform the Secretary of State of the change of address for its registered office for service. The Texas Business Corporation Act requires that all corporations shall "designate and continuously maintain" a registered office and a registered agent. TEX. BUS. ORGS. CODE ANN. § 5.201. A corporation "may change its registered office, its registered agent, or both by filing a statement of the change . . . ." *Id.* § 5.202. These provisions impose an affirmative duty on the corporation to ensure that the Secretary of State has current and accurate information on the whereabouts of the corporation's registered office and the identity of its registered agent. *See Catalyst Partners, Inc. v. BASF Corp.*, No. 02-10-00377-CV, 2011 WL 2306836, at *1 n.2 (Tex. App.—Fort Worth June 9, 2011, no pet.) (mem. op.) (explaining, although defendant complained plaintiff asked Secretary of State to serve defendant at address of defendant's registered agent when plaintiff knew registered agent's address "was not good," defendant had "statutory duty to update

11

its address for its registered agent"); *NETCO, Inc. v. Montemayor*, 352 S.W.3d 733, 740–41 (Tex. App.—Houston [1st Dist.] 2011, no pet.); *Global Servs., Inc. v. G & W Leasing Co.*, No. 01-94-01234-CV, 1996 WL 608904, at *7 (Tex. App.—Houston [1st Dist.] Oct. 24, 1996, writ denied) (not designated for publication).

Texas Underground argues that the trial court erred in denying its motion for new trial because it "satisfied" "the first element of the *Craddock* test" and Texas Underground "did not receive notice of the trial setting." Assuming, without deciding, that Texas Underground's failure to timely notify the Secretary of State of its registered office's change in address was not intentional or the result of conscious indifference,[10] we consider whether Texas Underground received actual or constructive notice of the hearing on Southwestern Bell's motion for default judgment. If Texas Underground did not, due process relieves it from the burden of proving the second and third *Craddock* requirements. *See Mathis v. Lockwood*, 166 S.W.3d 743, 744 (Tex. 2005) (holding lack of notice renders analysis under second *Craddock* requirement unnecessary and acknowledging, without deciding, that

---

[10]     *See Craddock*, 133 S.W.2d at 126 (first requirement defaulting party must satisfy to set aside default judgment and obtain new trial is that defaulting party's failure to file answer before judgment was not intentional or result of conscious indifference but was mistake or accident); *Polignone v. Bulldog Chems., LLC*, No. 01-16-00633-CV, 2018 WL 4128002, at *4 (Tex. App.—Houston [1st Dist.] Aug. 30, 2018, no pet.) (mem. op.) ("[T]o determine whether the trial court erred in not setting aside the default judgment against [defendants], we first consider whether their failure to answer was not intentional or the result of conscious indifference, but due to a mistake or an accident.").

12

intermediate appellate courts have also held that lack of notice renders analysis under third *Craddock* requirement unnecessary); *Lopez v. Lopez*, 757 S.W.2d 721, 723 (Tex. 1988) (defendant without actual or constructive notice of trial need not show meritorious defense to be entitled to new trial); *see also Maxx Builders, LLC v. Story*, No. 01-15-00850-CV, 2016 WL 3544495, at *3 (Tex. App.—Houston [1st Dist.] June 28, 2016, no pet.) (mem. op.); *Mahand*, 60 S.W.3d at 375 (extending *Lopez* in lack-of-notice cases to also dispense with third *Craddock* requirement of showing motion for new trial would not cause delay or injury).

Texas Underground attached to its motion for new trial the affidavit of Lugo, in which she states that she did not receive actual notice of the hearing on Southwestern Bell's motion for default judgment. Because this statement is undisputed, we confine our inquiry to whether Texas Underground satisfied its burden of establishing that it lacked constructive notice of the default-judgment hearing.

Southwestern Bell attempted to serve Texas Underground at the Val Verde address on March 29, 2019, but its attempt was unsuccessful, and Southwestern Bell discovered that the Val Verde address was a "bad" address. In April 2018, Southwestern Bell attempted to serve Texas Underground at the Cambridge Street address—its business address—during regular business hours on five different days but was unsuccessful every time. In an affidavit, the deputy constable who attempted

13

to serve the citation detailed those attempts and stated that it was "impractical to procure service" on Texas Underground because Lugo, Texas Underground's registered agent, had "absent[ed] or secret[ed]" herself "or otherwise evade[d] such service."

Texas Underground does not contest that Southwestern Bell's attempts at service were reasonably diligent. Because of Southwestern Bell's diligent but unsuccessful attempts to serve Texas Underground, Southwestern Bell was entitled to serve the Secretary of State as Texas Underground's substitute agent. *See* TEX. BUS. ORGS. CODE ANN. § 5.251(1)(B) (if "registered agent of the entity cannot with reasonable diligence be found at the registered office of the entity," Secretary of State becomes agent for service on corporation). Service on the Secretary of State is accomplished by delivering duplicate copies of the "process, notice, or demand" and any required fee. *See id.* § 5.252. On receipt, the Secretary of State forwards one copy of the "process, notice, or demand" to the registered office of the corporation's most recent address on file with the Secretary by certified mail, return receipt requested. *See id.* § 5.253. The Secretary of State's certificate is conclusive evidence that the process was properly served and filing the certificate with the clerk of the court disposes of the requirement in Texas Rules of Civil Procedure 107 and 239 that the citation and return be filed. *See Campus Invs. v. Cullever*, 144 S.W.3d 464, 466 (Tex. 2004).

14

Texas Underground maintains that Southwestern Bell should have informed the Secretary of State of Texas Underground's change of business address. But Southwestern Bell had no duty to update Texas Underground's address; the Texas Business Organizations Code imposes that duty solely on Texas Underground. *See generally* TEX. BUS. ORGS. CODE ANN. §§ 5.202–.204; *see also Catalyst Partners*, 2011 WL 2306836, at *1 n.2; *NETCO, Inc.*, 352 S.W.3d at 740–41; *Global Servs.*, 1996 WL 608904, at *7. The record shows that Southwestern Bell was diligent but unsuccessful in serving Texas Underground at its registered office and it strictly complied with the statutory service requirements for substituted service on the Secretary of State. Texas Underground thus received constructive notice.

Because Texas Underground had notice of the hearing on Southwestern Bell's motion for default judgment, it would be entitled to a new trial only if it showed the trial court that it has a meritorious defense and that a new trial would not result in delay or prejudice to Southwestern Bell. *See Craddock*, 133 S.W.2d at 126. During the hearing on the motion for new trial, Texas Underground's counsel asserted that that one of Southwestern Bell's subcontractors caused the damage to its cables and should have been designated as a responsible third party. *See id.* (second requirement defaulting party must satisfy to set aside default judgment and obtain new trial is that defaulting party has meritorious defense). On appeal, Texas Underground maintains that the possible existence of a responsible third party shows

15

that it has a meritorious defense.  But arguments of counsel are not evidence.  *E.g.*, *Wheelbarger v. Landing Council of Co-Owners*, 471 S.W.3d 875, 892 (Tex. App.—Houston [1st Dist.] 2015, pet. denied); *Tex. Dep't of Pub. Safety v. Mendoza*, 952 S.W.2d 560, 564 (Tex. App.—San Antonio 1997, no writ); *McCain v. NME Hosps., Inc.*, 856 S.W.2d 751, 757 (Tex. App.—Dallas 1993, no writ).  And Texas Underground cites no authority in support of its position.  Texas Rule of Appellate Procedure 38.1(i) requires that an appellant's brief "contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."  TEX. R. APP. P. 38.1(i).  "This is not done by merely uttering brief conclusory statements, unsupported by legal citations."  *Tesoro Petroleum Corp. v. Nabors Drilling USA, Inc.*, 106 S.W.3d 118, 128 (Tex. App.—Houston [1st Dist.] 2002, pet. denied); *see also Barham v. Turner Constr. Co. of Tex.*, 803 S.W.2d 731, 740 (Tex. App.—Dallas 1990, writ denied) (appellant bears burden of discussing his assertions of error).  A failure to provide substantive analysis of an issue or cite appropriate authority waives a complaint on appeal.  *Marin Real Estate Partners, L.P. v. Vogt*, 373 S.W.3d 57, 75 (Tex. App.—San Antonio 2011, no pet.); *Huey v. Huey*, 200 S.W.3d 851, 854 (Tex. App.—Dallas 2006, no pet.); *Cervantes-Peterson v. Tex. Dep't of Family & Protective Servs.*, 221 S.W.3d 244, 255 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

16

Because Texas Underground did not present any evidence that a third party is responsible for Southwestern Bell's damages and failed to adequately brief this argument on appeal, it has not shown that it has a meritorious defense, as required under *Craddock*. *See Craddock*, 133 S.W.2d at 126. Thus, we hold that the trial court did not err in denying Texas Underground's motion for new trial.

We overrule Texas Underground's first issue.

**Due Process and Public Policy**

In its second issue, Texas Underground argues that the trial court erred in rendering a default judgment against it because it was deprived of due process of law as the notice provided to it was not reasonably calculated to inform it of the pendency of Southwestern Bell's suit and did not afford it an opportunity to present its objections. In its fourth issue, Texas Underground argues that the trial court erred in rendering a default judgment against it because the Texas Business Organizations Code's standard for service of corporations conflicts with judicially-created procedures and offends public policy. Because we have concluded that the service of process on Texas Underground complied with Texas Business Organizations Code section 5.251(1)(B), we address these issues together.

The primary reason for a corporation's statutory duty to maintain a registered agent and registered office is so that aggrieved parties can serve the corporation in a lawsuit. *Global Servs.*, 1996 WL 608904, at *7; *Houston's Wild W., Inc. v. Salinas*,

690 S.W.2d 30, 32 (Tex. App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.); *see* TEX. BUS. ORGS. CODE ANN. § 5.206(a). The Texas Business Organizations Code puts corporations on notice that they must "designate and continuously maintain" a registered office and a registered agent and keep the Secretary of State apprised of any changes in the address and agent so designated. TEX. BUS. ORGS. CODE ANN. §§ 5.201, 5.202. The Code also makes plain the consequences of a failure to inform the Secretary of State of any such change: attempts to effect personal service may be unsuccessful and plaintiffs may have to resort to substituted service on the Secretary. *See id.* § 5.251. And the inevitable result is what happened here: the Secretary of State forwarded the citation, first amended petition, and discovery requests to an undeliverable address.

In Texas, "all persons are presumed to know the law." *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 n.3 (Tex. 1990). This presumption has particular force here, because but for the Texas Business Organizations Code, Texas Underground would not exist. *See* TEX. BUS. ORGS. CODE ANN. § 3.001; *see also Willis v. Donnelly*, 199 S.W.3d 262, 271 (Tex. 2006) ("A bedrock principle of corporate law is that an individual can incorporate a business and thereby normally shield himself from personal liability for the corporation's contractual obligations.").

Texas courts have held that the method of substitute service on a corporation prescribed by the Texas Business Organizations Code is reasonably calculated,

18

under the circumstances, to notify the corporation of the pendency of the lawsuit and afford the corporation the opportunity to present a defense. *See Tankard-Smith Inc. Gen. Contractors v. Thursby*, 663 S.W.2d 473, 476 (Tex. App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.) (holding due process not violated where "the failure of the method of service was the result of the corporation's own failure to comply with the statutory requirements which are designed to assure it of notice of pending suits"); *TXXN Inc. v. D/FW Steel Co.*, 632 S.W.2d 706, 709 (Tex. App.—Fort Worth 1982, no writ) (holding no due-process violation where failure of method of service was "the result of [defendant]'s own failure to comply with the statutory requirements which were designed to assure it of notice of pending suits, not of any failure on the part of [plaintiff]"). When a corporation fails to comply with its statutory duties, as Texas Underground did here, it "cannot be heard to complain of a lack of a due process." *Tankard-Smith*, 63 S.W.2d at 476; *see Campus Invs.*, 144 S.W.3d at 466 (defendant's negligence in complying with statutory duties, i.e., its failure to update addresses for its registered agent and registered office, caused lack of notice, not any defect in citation). We hold that the service of Southwestern Bell's suit in compliance with Texas Business Organizations Code sections 5.251(1)(B) and 5.252 did not deprive Texas Underground of due process, and the trial court did not err in rendering a default judgment against Texas Underground based on this ground.

19

As for Texas Underground's assertion that the Texas Business Organizations Code's standard for service of corporations conflicts with judicially-created procedures, no such conflict exists. *See Campus Invs.*, 144 S.W.3d at 466 (explaining Secretary of State's certificate is conclusive evidence process was properly served and filing certificate disposes of requirement under Texas Rules of Civil Procedure 107 and 239 that citation and return be filed). And as for Texas Underground's public policy challenge, we defer to the Legislature's determination of public policy as reflected in the statute. The Legislature, and not the courts, generally establishes public policy. *Royston, Rayzor, Vickery & Williams, L.L.P. v. Lopez*, 467 S.W.3d 494, 504 (Tex. 2015) ("It is by now axiomatic that legislative enactments generally establish public policy."); *Fairfield Ins. Co. v. Stephens Martin Paving, LP*, 246 S.W.3d 653, 665 (Tex. 2008) ("The Legislature determines public policy through the statutes it passes."). We hold that Texas Underground has failed to demonstrate that service in compliance with Texas Business Organizations Code sections 5.251(1)(B) and 5.252 conflicts with either the Texas Rules of Civil Procedure or public policy, and the trial court did not err in rendering a default judgment against Texas Underground based on either of those grounds.

We overrule Texas Underground's second and fourth issues.

## Sufficiency of Pleadings

In its third issue, Texas Underground argues that the trial court erred in rendering a default judgment against it because the allegations in Southwestern Bell's petition were insufficient to support the judgment.

Texas Rule of Civil Procedure 47 requires an original pleading setting forth a claim for relief to contain "a short statement of the cause of action sufficient to give fair notice of the claim involved." TEX. R. CIV. P. 47(a). Texas Underground acknowledges that this Court has consistently applied a liberal pleading standard[11] but, citing *White v. Jackson*, 358 S.W.2d 174 (Tex. App.—Waco 1962, writ ref'd n.r.e.), suggests that we should apply a more stringent standard to the pleading of negligence claims, even though rule 47 does not impose a different pleading standard for negligence claims.

Since the Waco Court of Appeals decided *White*, the Texas Supreme Court has resolved any conflict in pleading standards among the courts of appeals in favor of a liberal approach. In applying Texas Rule of Civil Procedure 47, the Texas Supreme Court has declared that "[a] court should uphold the petition as to a cause

---

[11] *See, e.g.*, *King v. Lyons*, 457 S.W.3d 122, 126 (Tex. App.—Houston [1st Dist.] 2014, no pet.) ("[W]e liberally construe a petition to include claims that may reasonably be inferred from the language used . . . ."); *see also Lee v. Global Stainless Supply, Inc.*, No. 01-7-00865-CV, 2018 WL 6684854, at *13 (Tex. App.— Houston [1st Dist.] Dec. 20, 2018, pet. denied) (mem. op.) (recognizing "our liberal, fair-notice pleading standard").

of action that may be reasonably inferred from what is specifically stated, even if an element of the cause of action is not specifically alleged." *Boyles v. Kerr*, 855 S.W.2d 593, 601 (Tex. 1993); *accord Ulusal v. Lentz Eng'g, L.C.*, 491 S.W.3d 910, 917 (Tex. App.—Houston [1st Dist.] 2016, no pet.). And more recently in *DeRoeck v. DHM Ventures, LLC*, the court reaffirmed the leniency of rule 47's pleading standard. 556 S.W.3d 831, 833, 835 (Tex. 2018) (reversing court of appeals's holding that cause of action for acknowledgment of a debt must be "specifically and clearly" pleaded because it conflicted with rule 47).

In its amended petition, Southwestern Bell alleged that it is a telephone corporation and public utility and that the Underground Facility Damage Prevention and Safety Act requires an excavator to "notify a notification center not less than 48 hours nor more than 14 days before the date the excavation is to begin." *See* TEX. UTIL. CODE ANN. § 251.151(a); *see also id.* § 251.101(a) (notification center receives notification of intent to excavate and disseminates that information to "operators [of underground facilities] that may be affected by the excavation"). Southwestern Bell explained that the "purpose of the notice is to allow the underground utility operator an opportunity to mark the approximate location of its underground facilities in advance of the excavation." *See id.* § 251.002(11), (13) (defining "[o]perator" and "[u]nderground facility" (internal quotations omitted)). Southwestern Bell "had had three copper communications cables," which were

22

components of its telecommunications system, "buried below the surface of the right-of-way of Dairy View Lane approximately 92 feet north of Bissonnet Street in Houston, Harris County, Texas." And in September 2017, Texas Underground "bored and excavated near the median of Dairy View Lane at that location, and when it did, it struck and damaged [Southwestern Bel]'s cables," requiring repair at a reasonable cost of "at least $20,486.11" but no more than "the jurisdictional limits of the [trial] [c]ourt."

Fairly read, Southwestern Bell, in its petition, alleged that Texas Underground had a statutory duty to provide timely notice of its intent to excavate and a duty to "avoid striking [Southwestern Bell]'s facilities while excavating in the right-of-way." And the breach of these duties proximately caused Southwestern Bell's damages and rendered Texas Underground liable for those damages.

Texas Underground admits that according to the standard this Court has applied in interpreting pleadings—which is consistent with that applied by the Texas Supreme Court—these allegations give fair notice of the claims involved in the suit. We agree. We thus hold that the trial court did not err in rendering a default judgment against Texas Underground based on Southwestern Bell's pleadings.

We overrule Texas Underground's third issue.

23

**Legal Sufficiency of Evidence Supporting Damages Award**

In its fifth issue, Texas Underground argues that the trial court erred in rendering a default judgment against it because the evidence is legally insufficient to support the trial court's damages award.

The non-answering defendant in a no-answer default judgment has effectively admitted both the truth of the facts alleged in the plaintiff's petition and its liability on any cause of action properly alleged by those facts. *Paradigm Oil, Inc. v. Retamco Operating, Inc.*, 372 S.W.3d 177, 183 (Tex. 2012). But the plaintiff must still present proof of its unliquidated damages. *See* TEX. R. CIV. P. 243; *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 83 (Tex. 1992). A defendant's failure to meet the *Craddock* requirements does not foreclose review on appeal of the sufficiency of the evidence of damages to support a no-answer default judgment. *See Holt Atherton Indus.*, 835 S.W.2d at 82–83, 86; *see also Said v. Allstate Ins. Co.*, No. 01-12-00435-CV, 2013 WL 4676254, at *2 (Tex. App.—Houston [1st Dist.] Aug. 27, 2013, no pet.) (mem. op.) ("The legal and factual sufficiency of the evidence supporting an award of unliquidated damages after a default judgment may be challenged on appeal.").

If no findings of fact or conclusions of law are filed or requested in a bench trial, we assume that the trial court made all findings necessary to support its judgment. *See Holt Atherton Indus.*, 835 S.W.2d at 83. In a legal-sufficiency

24

review, we consider only the evidence and inferences that tend to support the finding and disregard all contrary evidence and inferences. *Id.* at 84. Anything more than a scintilla of evidence is legally sufficient to support the trial court's finding. *See id.*

Southwestern Bell attached to its motion for a default judgment the affidavit of Hartwell, its Senior Risk Specialist, and its authenticated business records showing the labor and material used and expenses incurred to repair the cables damaged by Texas Underground. One report in the business records specifies the date of the repair, names each employee who assisted in making the repair, itemizes the regular and overtime hours expended, identifies each employee's hourly rate, provides the total hours worked by each employee, and calculates a total cost of $8,254.53 for the employee-hours required to accomplish the repair. Another report itemizes the materials required to make the repair, the number of units of each material used, the cost per unit, and shows that the total cost of the materials used was $2,196.67. That report also shows that Project Telcon LLC, the contractor used by Southwestern Bell to make the required repairs, charged Southwestern Bell $10,034.91 for its services.[12] The sum of these reported costs is $20,486.11—the amount of damages awarded to Southwestern Bell in the trial court's default

---

[12] The business records also show that Southwestern Bell made a demand for $20,486.11 to Texas Underground at the Cambridge address on January 2, 2018.

25

judgment.  We hold that the evidence is legally sufficient to support the trial court's damages award.

We overrule Texas Underground's fifth issue.

## Conclusion

We affirm the judgment of the trial court.


Julie Countiss<br>Justice

Panel consists of Justices Countiss, Rivas-Molloy, and Guerra.